Hecox and others *v.* The Citizens' Ins. Co. of St. Louis and another, U. S. Marshal.

(*Circuit Court, N. D. Illinois.* ———, 1880.)

Surety—Insurance Agent—Application of Moneys Remitted—Restraining Enforcement of Judgment.—An insurance agent, by requirement of the company for which he was acting, gave a bond for the faithful performance of his duties, and an accounting of moneys received. At the time of giving such bond he was delinquent to said company on account of past transactions. Such agent afterwards made remittances to the company, directing that they be applied upon past transactions. A judgment at law having been recovered against the sureties on the bond, a bill was filed by them to restrain its enforcement, claiming that the remittances made were from current business, after the bond was given, and should be applied upon such account. *Held,* that to entitle complainants to the relief prayed, it must appear that the moneys remitted were in fact from current business, and that the company had knowledge of that fact when it received and applied the money on account of former transactions, as directed, and proof not sufficiently showing this, the bill should be dismissed.

*Mr. Kales,* for complainants.

*Mr. Whiton,* for defendants.

Dyer, D. J. On the sixth day of April, 1877, and for several years prior thereto, one Pottle was the agent at Chicago of the defendant insurance company, whose principal place of business was at St. Louis, in the state of Missouri. On the day mentioned, by requirement of the defendant company, Pottle executed a bond in the sum of $5,000, conditioned that as the agent of the insurance company, authorized to receive sums of money for premiums, payment of losses, salvages and collections, he would pay over such moneys correctly, and in every way faithfully perform his duties as agent, in compliance with the instructions of the company, through its proper officers. Complainants in the present bill, Hecox and Briggs, joined in the execution of this bond as sureties for Pottle.

In 1878 the insurance company sued complainants, impleaded with Pottle in this court upon said bond in a plea of debt, and recovered judgment against complainants for the sum of $5,000. At the time of the execution of this bond

Pottle was indebted to the insurance company, on account of past transactions for the company, in the sum of $5,223.80, and between the date of the execution of the bond and September 19, 1877, there became due to the company from Pottle, on account of business done by him between those periods, $4,114.70. From April 6, 1877, the date of the bond, to September 19th of the same year, Pottle remitted to the company $3,370, all of which was, by his direction, applied upon his indebtedness to the company which accrued prior to the execution of the bond. The purpose of the present bill is to obtain an injunction restraining proceedings for the collection of the judgment at law against complainants, for an accounting to ascertain what is justly due to the defendant company on account of the defalcations of Pottle, and to avoid the legal effect of the judgment recovered against complainants as Pottle's sureties on the bond.

The material allegations of the bill are that at the time of and prior to the making of the bond Pottle was informed by the company that if he would give a bond, with good sureties, he should be at liberty to deposit the moneys of the company in bank with his other moneys, to his own credit and in his own name; that all of Pottle's remittances, after the execution of the bond, should be applied upon his old accounts, on which he was in arrears to the insurance company, and that Pottle then understood from the company that if he would give such a bond, and apply his collections afterwards made to the payment of his former deficits, he would be allowed to go on as previously, and act as the agent of the company; that Pottle, at the time of making the bond, understood from the insurance company that by giving the same he would be allowed to continue in business as agent, and to deposit moneys collected for the company in bank with his own funds and in his own name, and would be required out of such account to make remittances and to allow the same to be applied on account of his prior defalcations, and that he acted upon this understanding with the company in remitting and directing the application of the moneys afterwards collected by him, supposing that in so

doing he was carrying out the understanding between himself and the insurance company.

It further alleged that complainants did not, until after the recovery of the judgment at law, become cognizant of the agreement and understanding between Pottle and the insurance company, nor of the mode in which business was transacted between them, but were advised by Pottle of the facts after the recovery of the judgment, and when execution was in the hands of the defendant marshal, and that they executed the bond in ignorance of the fact that Pottle was, at the time, a defaulter to the company.

The answer of the defendant company denies the material allegations of the bill, and it is unnecessary, for disposition of the case, to state in detail the denials and affirmative allegations contained in the answer.

The contention on the part of complainants is that for a long time previous to the execution of the bond Pottle had been in the habit of depositing moneys, which he received as agent of the insurance company, in bank in his own name, and to the credit of his individual account, thereby converting the same to his own use; that remittances to the company were made by his individual checks upon such account, and that while pursuing this course of dealing he became a defaulter; that being required to give the bond in question he was allowed by the company, thereafter, in pursuance of previous methods of business, to convert the moneys which he thereafter received to his own use, and then to apply those moneys in satisfaction of indebtedness which accrued before and existed at the time of the execution of the bond; that all this was permitted under an implied if not express understanding between the insurance company and Pottle; that the application of moneys received by him upon current business, transacted after the execution of the bond, to his previous defalcations, operated constructively, if not actually, as a fraud upon the sureties; that therefore they have an equitable right to satisfaction of the bond to the extent of the moneys remitted on account of the current business accruing after the execution of the bond. In other words, that, as

against the sureties, it was a breach of trust on the part of Pottle to put the moneys which he received from accruing business after the execution of the bond on deposit in his own name, and then to direct his remittances to be applied in satisfaction of his former indebtedness, and that the defendant company was cognizant of this course of dealing on Pottle's part, and adopted and ratified it.

The testimony in the case is not voluminous, and, in my opinion, fails to meet the point upon which the case must turn, and which it is essential to establish to give complainants the relief they ask. The bond was wholly prospective in its terms and operation. It was intended only to secure the payment by Pottle to the insurance company of such moneys as he should thereafter receive as agent for the company. Of this there can be no doubt. Neither can there be doubt that if there was a conspiracy or actual agreement between the company and Pottle, made or existing at the time the bond was executed, by virtue of which the bond should be obtained and the moneys thereafter received by Pottle as agent should be applied upon prior defalcations, and if such a conspiracy or agreement were carried out, and not discovered by complainants until after the trial of the action at law, complainants would be in position to ask the interposition of a court of equity for their relief. But the testimony fails to show such a state of case, and indeed, upon the argument, the learned counsel for complainants was not understood to insist that such conspiracy or actual agreement was proved.

The facts seem to be that, during his agency, and up to the time of giving the bond, Pottle deposited the moneys of the company, as fast as collected, in the bank where he kept his account, to his own credit, and that he made remittances by his personal check on his banker. He was, both before and after the execution of the bond, agent for other insurance companies, and all moneys received by him as such agent were, as it would appear, mingled in a common fund, and deposited and remitted in manner before indicated. After giving the bond he made collections, deposits and remit-

tances in the same way, and his remittances both before and subsequent to the execution of the bond were, by his direction, applied upon all such of his unpaid monthly accounts as were earliest due. To illustrate: Subsequent to the execution of the bond he from time to time directed, by letter, that remittances then sent in the form of check should be applied on a designated account, and his remittances were so applied, thus reducing the amount of his default existing at the time of the execution of the bond. It does not appear that complainants were induced to become Pottle's sureties by any act or upon any solicitation of the company. They signed the bond as friends of Pottle, at his request, and on his assurance that they should never suffer.

Now, while there is force in the view urged by counsel, that the appropriation of moneys which Pottle received upon current business and remitted, after the execution of the bond, to the satisfaction of old indebtedness, would necessarily operate to the injury of the sureties, I am of the opinion that complainants' right to the relief they now seek, even admitting that the facts would not constitute a defence to the action at law, depends upon the point of knowledge on the part of the insurance company, at the time it received such remittances, that they were of the moneys which Pottle received from current business accruing after the execution of the bond. This, I think, is the decisive and turning point in the case, and, in my judgment, upon this point the proofs are inadequate. The officers of the insurance company were resident at St. Louis. Their business transactions with Pottle were conducted wholly by correspondence, and this correspondence is in evidence. It is not proven that it was agreed between the company and Pottle that if he would procure a bond he might deposit in his own name the moneys which he should receive as agent. There is no proof that the insurance company knew that he thus dealt with their moneys except as such knowledge may be inferred from the fact that his remittances were in the form of his individual checks. The case is devoid of satisfactory evidence that the company knew that the remittances which they received after the exe-

cution of the bond were of the moneys received by him from their current business, or that the company was a party to any agreement or understanding that remittances should be made from such moneys to apply upon old indebtedness. The company seems to have received remittances in the ordinary course, with directions on the part of its debtor to apply them in a certain way, and they were so applied. Indeed, it cannot, upon the evidence, be found that the moneys which Pottle received from current business, after the execution of the bond, were the moneys remitted by him to the defendant company. For aught that appears, he may have used those moneys on his personal account and remitted other moneys received from other insurance companies, or from other sources, to the defendant company.

Pottle, in his testimony, says that he cannot testify that he was requested to remit as usual after giving the bond. He does say, however, that the reason he directed his remittances to be applied on the old account, instead of the current months for which collections were made, was because it was his understanding, at the time the bond was given, that he should remit on account of subsequent collections, as he had remitted before. But the proofs do not bring home to the insurance company such understanding, and he states that when the bond was mailed to the defendant company he had no talk with any of the company's officers as to the manner in which he should keep his bank account or the company's funds, and that he had never shown his account to the officers of the company. So far as any understanding in relation to deposits and remittances is concerned, it rests in inference, and seems to have been solely the understanding of Pottle, without evidence of participation therein by the insurance company.

It is true that in the letter which the secretary of the company wrote to Pottle, requesting the execution of the bond, reference is made to the then existing indebtedness of Pottle, and it is stated that it is the wish of the company to have security against any contingency, and it may have then been thought that the bond which Pottle was required to give would secure past as well as any future liability. But the

bond which was subsequently executed plainly informed the company that it was wholly prospective in its terms and legal effect. If enough were established by the testimony to show either an actual or constructive fraud upon the sureties in the application of payments, and that the company was knowingly a party to the transaction, there would be, as I conceive, difficulty in perceiving why such a state of facts would not be a defence maintainable in an action at law on the bond. However that may be, my conclusion is that in this suit in equity, to entitle complainants to relief against the judgment already recovered, it must appear that the moneys remitted by Pottle after the execution of the bond were, in fact, moneys which he received as agent from current business, and that the defendant company had knowledge, when it received such moneys and applied them in the manner directed by Pottle, that they were moneys which he received from business accruing after the execution of the bond, and, in this regard, the proofs do not meet the requirements of the case.

The bill must therefore be dismissed.