Maxwell, J.
This was a suit upon a bond executed by Boyd, as principal, and the other plaintiffs in error as sureties.
One of the conditions of the bond is, that Boyd should at all times, upon the request of the company or its authorized agent, pay and deliver to said company all moneys, etc., belonging to said company.
I The breach assigned is, that during the months ' of July, 1898, to January, 1899, inclusive, Boyd, as such agent, received into his hands moneys for premiums, after allowing all credits, rebates and commissions, in the sum of $2,624.84, which he wholly failed and refused to remit or pay over to the plaintiff, or to any person upon its behalf.
*31 Trial to the court resulted in a judgment against defendants in the sum of $2,245.39.
The defendant Sherman says, that the paper sued on is not his bond.
The bond sued on was dated December 2, 1897, and on that day signed and acknowledged by Boyd and Sherman. Thereafter, the bond was transmitted to the insurance company at its home office at Water-town, New York. The insurance company decided that the surety was not sufficient, and after some correspondence with Boyd, upon his request, returned the bond to him for additional sureties. February 23, 1898, upon the request of Boyd, the bond was signed by Livermore, Gillette and Evans, whose names were, at that time, inserted in the body of the bond, in a blank space, the bond being upon a printed blank form. No other change was made in the bond.
Under the above facts, it is contended on behalf of Sherman that the insertion of the names of the additional sureties in the body of the bond, and the signing of the bond by such sureties, was such a material alteration of the bond as to render it invalid as to him.
In Palacios v. Brasher, 18 Colo. 593, in discussing the effect upon sureties of filling blank spaces in. a bond, Justice Goddard uses the following language:
“It certainly is consonant with justice and fairness that when a person, as a surety, signs an incomplete undertaking, and places the same in the hands of another, to use for a particular purpose, and with ostensible authority to fill in any needed matter to make the same effective, and the same is accepted in its completed form by the obligee, without negligence on his part, that such surety ought to be estopped from controverting its validity to the prejudice of such obligee.”
Applying the doctrine there enunciated, to the *32 facts in the case under consideration, it follows, that when one signs a bond as surety, in which bond there is a blank space for the insertion of names of other sureties, and places such bond in the hands of the principal, he vests such principal with implied authority to insert in the body of the bond the names of other sureties, and to cause the same to be executed by other sureties, and if such bond is accepted by the obligee, without negligence upon his part, such surety is estopped from controverting its validity to the prejudice of the obligee.
Again, the bond in this case could not be said to have been delivered at the time when the names of the additional sureties were inserted in the body of the bond and signed thereto. It had been presented to the obligee for investigation as to the sufficiency of the sureties, subject to be returned to the principal for additional sureties in the event that the same was not satisfactory to the obligee. It did not become a contract until it was delivered. It follows, therefore, that the insertion of the names of the additional sureties in the body of the bond, and the signing by them, was not an alteration of the contract.
The rule which should control this case is stated in Lewiston v. Gagne, 89 Me. 394, 399:
‘ ‘ One who signs an official bond as surety, at the request of the principal, thereby, qua the obligee, gives him implied authority to procure additional sureties to make the bond satisfactory to the obligee. That is the only practical way to procure an official bond, and it makes no difference when the additional sureties are obtained. If the bond be approved by the obligee, and before the principal enters upon the duties of his office, at the request of the obligee, the principal procures additional sureties, the act comes within the implied authority given when the existing *33 sureties executed the bond on their part. The proceedings would be wholly for their benefit, and not change the obligation between the obligor and the obligee in the slightest particular, and upon no principle of law can it be said to destroy the bond. The defense of the four sureties that a fifth had been added after the bond had once been approved and before the principal entered upon the duties of his office, must fail. ’ ’
We therefore conclude, that there was not such a material alteration of the bond in cpntroversy as to vitiate it as to Sherman.
In behalf of all the sureties, it is said, that the bond was never accepted by the obligee.
The' evidence shows, that the obligee was not satisfied with the bond, and at different times complained that the sureties were not satisfactory. However, the bond was retained by the obligee, and, while it may not have been satisfactory, it is evident that it was accepted for the purpose for which it was given, as shown by the fact that Boyd was permitted to act as agent of obligee "during a period of more than a year, and that this action was instituted thereon for the purpose of recovering, if possible, the amount of Boyd’s indebtedness to the company.
The acceptance of the bond must be presumed, from the fact that it was retained by the obligee and the agent continued in the discharge of. his duties.
The authorities cited by plaintiffs in error in support of this position, are to the effect that oficial bonds do not become operative until after the same have been approved by some officer authorized by law to approve the same, and for this reason they are not in point, the reason being that approval was essential to their validity.
It is also said, in behalf of all the sureties, that after the execution by them of the bond in contro *34 versy, the duties of Boyd to the insurance company were increased, by reason of the fact that he was appointed general agent of the company for the state of Colorado, and that the bond in suit is the bond of a special agent, for the county of Arapahoe only.
A sufficient answer to this is, that the contract appointing Boyd general agent was made before the second day of December, 1897, the date of the bond; .and, also, that the acts complained of in this action were not acts of Boyd as general agent of the company, and- no recovery is sought by reason of any default or failure to perform any duty appertaining to the office of general agent.
The leading question to. be determined is, Did Boyd, during the months specified in the complaint— July, 1898, to January, 1899 — receive into his hands moneys for premiums, which, after allowing credits, rebates and commissions, he failed to pay over to the company?
The plaintiffs in error maintain that, under the breach alleged, no testimony should have been received by the court, except such as related to the condition of the accounts between Boyd and the company during the specified months, and that, unless it appears that Boyd actually received, during such months, premiums which he failed to account for or pay over to the company, that then, no recovery whatever could be had. In other words, the contention is that, if it should appear from the accounts that Boyd paid to the company, during such months, an amount of money equal to the premiums with which he was charged, then no recovery could be had in this action, under the breach alleged.
After the introduction of much testimony tending to show the condition of the accounts between the company and Boyd, a stipulation was entered into by the parties, to the effect that an “exhibit,” which *35 was introduced and made part of the record, correctly stated the total debits with which Boyd was chargeable, and the total credits to which he was entitled, for the period of time extending from September, 1897, to January, 1899, both inclusive. This exhibit proved an indebtedness of Boyd to the company, in an amount exceeding the amount for which judgment was rendered. It also showed, that during the period from July, 1898, to January, 1899, Boyd remitted to the company an amount of money exceeding the total debits with which he was charged, after deducting all credits to which he was entitled.
Testimony was introduced by plaintiff which proved that, previous to the date of the bond, Boyd had been the agent of the company; that he was indebted to it for the months of September, October and November, 1897; that under a written contract, dated December 1st, 1897, he agreed to pay, during December, 1897, his indebtedness for all policies issued prior to October 1, 1897; that he agreed to pay, in January, 1898, his indebtedness for October business, and so on thereafter, during the continuance of the contract; that, in many instances, prior to July, 1898, in making remittances to the company, he directed the application of the remittances to the payment of his prior indebtedness; that all remittances made by Boyd during the months from July, 1898, to January, 1899, the period covered by the breach alleged, had been applied by the company, pursuant to the terms of the contract and the applications made by Boyd, to the payment of indebtedness which had accrued prior to these months.
Boyd’s bookkeeper testified that Boyd’s books showed the application of these remittances upon the preceding successive monthly balances, throughout the entire account, from September, 1897-, to the date of the last credit.
*36 Boyd himself testified that the money received from premiums on policies of The Agricultural Insurance Company, was deposited in a common fund, and that remittances made to the company were made from this common fund and from other private funds.
The defendants at all times objected to the introduction of any testimony as to any account between the plaintiff and defendant Boyd, prior to July 1, 1898, and to that portion of the above-referred-to “exhibit,” showing the condition of the accounts prior to that date, upon the grounds that the same was irrelevant, immaterial and did not prove or tend to prove any issue presented by the pleadings.
The well-settled rule is, that a debtor who owes several debts to the same creditor, has the right, at the time of making a remittance, to apply it to any one of the debts he pleases.
As before stated,' in many instances Boyd, in making his remittances to the company, directed the application of such remittances to the payment of the indebtedness of preceding months. In other instances the amounts of the remittances were identical with the amounts of the balances due for the preceding months, clearly indicating the intention upon the part of Boyd to apply the remittances to the preceding months. — Stone v. Seymour, 15 Wend. 19.
• The evidence furnished by Boyd’s books, is conclusive as to the application made by Boyd of the remittances made by him, as they show, item by item, that remittances were applied to the preceding-months throughout the entire account, so that there can be no question as to the application of the remittances made by Boyd.
The rule deduced from the authorities with reference to sureties, is that the right of the principal to make applications of the remittances is a legal *37 right, to the exercise of which the surety cannot object, except in cases where a diversion of funds, which the surety is entitled to have applied in a particular manner, is attempted, in fraud of the rights of the surety — as, for instance, where the contract of the principal requires him to remit specific moneys collected, or to keep the money in an account in the name of the obligee, and therefrom make remittances —and then only when the obligee has knowledge of the attempted diversion of the funds, and the same is attempted or accomplished in collusion with the principal. No such ease is presented here.
In State v. Sooy, 39 N. J. Law, 538, 546, it is said:
“It is only when the court is called upon to make the appropriation in the absence of an appropriation by the parties, that the equities of third persons will be allowed any influence. Highly favored as sureties are in the law, their equities are subordinated to the legal rights of the debtor to direct how his payments shall be applied. As was said by Best, C. J., in Williams v. Rawlinson, 10 Moore 371: ‘If the principal consented to such an appropriation, there is an end of the question, for he had clearly an option as to which account the payment should be applied to, and he, alone, had an unfettered right in this respect, and over which the defendant, as surety, could have no control, unless there were an express or distinct agreement entered into at the time of the execution of the bond.’ ”
See, also, Chapman v. Commonwealth, 25 Grattan 721; Stone v. Seymour, 15 Wend. 19; Hecox v. Citizens’ Ins. Co., 2 Fed. 535; Aetna Life Ins. Co. v. American, Surety Co., 34 Fed. 291.
In Allen v. Culver, 3 Denio 284, after stating the rule as to the application of payments, the court say:
“This general rule applies equally in favor of *38 sureties and guarantors; and any appropriation made by the party, entitled at the time to make such appropriation, is binding upon the parties.” (Citing cases.)
The principal having the legal right to make an application of the payments, having made it, not in fraud of the rights of the sureties and not against any contract rights of the sureties, they are bound thereby.
The case of Rockford Ins. Co. v. Rogers, 15 Colo. App. 23, relied upon by plaintiffs in error as decisive of this case, instead of being at variance with the principles above set forth, distinctly recognizes them.
In that case it is said, page 27: “We do- not wish to be understood as saying that a state of facts might not exist, which, notwithstanding the remittances proven, wmuld create a liability against the sureties. Mr. Wells might have converted to his own use the receipts from his second agency, and the payment of his old debt might have been an independent matter, wholly unconnected with the business he was then transacting. Such a situation would present a question which the record before us does not raise. ’ ’
The state of facts not existing in the Rockford case is here present. The element not proven in that case — the application of the remittances by the principal — is conclusively proven here, and such application, as to tbe sureties, has the same effect as though the principal had applied the remittances to the satisfaction of a debt wholly unconnected with his agency.
There was no error in admitting the testimony objected to-.
It is urged on behalf of the sureties that the failure of the company to notify them of Boyd’s default in July, and his continuance by the company as its agent, after such default, relieved them of liability.
Watertown Ins. Co. v. Simmons, 131 Mass. 85, *39 was an action against defendants as sureties: on a bond given by Dix, conditioned for tbe faithful performance of duties as agent for plaintiff. It appeared that Dix rendered his monthly accounts regularly, but that in December, 1877, he failed to pay the whole balance due by him, and that thereafter- his indebtedness to the company increased from month to month, until his death, in March, 1897, when he owed a balance larger than the amount of the bond. Plaintiff did not notify the sureties of his default until "after his death. Defendants contended that they were discharged from their liability as sureties by these facts. The court say:
“It is too well settled to be questioned, that the delay of the plaintiff to collect the monthly payments due by Dix, would not of itself discharge the sureties. Mere delay by the creditor to proceed against the debtor, unaccompanied by fraud or an agreement to give time, does not discharge the sureties. # . * , * There is no rule of law which makes it a. duty which the creditor,- under the circumstances of this, case, owes to the surety, either to dismiss its agent or to notify the surety of his default. If a creditor does any act which injuriously affects the situation and rights of the surety, such as giving time to the debtor, or relinquishing security which he holds for the debt, he discharges the surety, either in whole or pro,-tanto. But the creditor owes no duty of active diligence to take- care of the interest of the surety. It is the business of the surety to see that his principal performs the duty-which he has guaranteed, and not that of the creditor (citing authorities). The surety is bound to inquire for himself; and cannot complain that the creditor does not notify him of the state of the accounts between him and his agent, for whom- the surety is liable. Mere inaction of the creditor will *40 not discharge the surety, unless it amounts to fraud or concealment.”
To the same effect are, Phoenix Mutual Life Ins. Co. v. Holloway, 51 Conn. 310; Richmond, etc., R. R. Co. v. Kasey, 30 Grattan 218; Phenix Ins. Co. v. Findley, 59 Ia. 591.
There are authorities which seem to hold a contrary doctrine, upon facts somewhat different from the facts in this case; hut the weight of authority is in favor of the doctrine announced in Watertown Ins. Co. v. Simmons, supra, and we believe that the principles there announced should prevail in cases of this character.
Plaintiff in error, Boyd, filed in this court, what he-termed a “supplemental answer or petition,” setting forth that, December 26, 1900, he filed a petition in bankruptcy in the United States district court for the district of Colorado; that March 11, 1900, an order was made therein discharging him from all debts and claims provable against his estate which existed December 26, 1900; that thereby he was released and discharged from all debts, liabilities and obligations to the defendant in error, and prays for an adjudication of this court, that by the discharge in bankruptcy he was discharged from all liability on account of the judgment of the court below, and that by his release and discharge, his codefendants in such judgment were also released.
Defendant in error questions the jurisdiction of this court to entertain such petition, upon the ground that the matters set forth in the petition are dehors the record.
Decisive of this question is Atkinson v. Tabor, 7 Colo. 195, where it is said :
“Matters may occur subsequent to judgment which operate to waive the right of a party to have the judgment reviewed on appeal or upon writ of *41 error. 'When such matters appear of record the objection is properly raised by a motion to dismiss; but when they do not so appear, the objection must be raised by a plea in bar of the proceedings in error. Powell on Appellate Proceedings, 121, § 12a, and authorities cited. * * * To sustain the appellant’s objection, and hold that we are without power to institute such inquiry, is equivalent to saying that the supreme court of Colorado is without power to determine a question pertaining to its own jurisdiction. ’ ’
Coe v. Waters, 16 Colo. App. 311, is a recognition of the jurisdiction of this court, to determine the force and effect of a discharge in bankruptcy pending an appeal.
We perceive no difference, in this regard, between an appeal and a writ of error.
The “objections” to the filing of this petition must be treated as a demurrer, consequently the material facts alleged in the petition are admitted; from which it appears that after the rendition of the judgment herein, Boyd, by the decree of the United States district court for the district of Colorado, was discharged from all debts and claims provable, under the bankruptcy law, against his estate, which existed December 26, 1900.
The judgment herein was such a debt or claim, therefore, as to Boyd the discharge was a payment, by operation of law, of such debt (Coe v. Waters); unless the debt or claim, which was the basis of the judgment herein, falls within the class of debts or claims excepted from the operation of the discharge, assuming that the character of the debt or claim, which is the basis of the judgment, may be looked to, which point we do not decide.
Sec. 17, chapter 3, of the Bankruptcy Act of 1898, provides:
*42 ; “A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * # * (4) were created by his fraud, embezzlement, misappropriation or defalcation, while acting as an officer or in any fiduciary capacity.” — Brandenburg on Bankruptcy, 526.
Chapman v. Forsyth, 2 Howard 202, was a suit against a factor who had sold cotton for his principal and failed to account for the proceeds. He pleaded a discharge in bankruptcy under the act of 1841. In the course of the opinion the court said:
1 ‘ The second point is, whether a factorwho retains the money of his principal, is a fiduciary debtor within the act.
"If the act embrace such a debt, it will be difib cult to limit its application. It must include all debts arising from agencies; and, indeed, all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in á commercial sense, a disregard of a trust. *■ * * In answer to the second question, then, we say that a factor who owes his principal money received on the sale of his goods, is not a fiduciary debtor, within the meaning of the act. ’ ’
The supreme court of Massachusetts, in Cronan v. Cotting, 104 Mass. 245, have held that the act of 1867, meant the same, and should receive the same construction as that given to the act of 1841.
The provisions of the act of 1898, quoted supra, are almost identical with the provisions of the act of 1867. — Brandenburg on Bankruptcy, 494.
The clause in the bankruptcy act of 1898 — debts created while acting in any fiduciary capacity— *43 'includes only technical trusts, and not trusts implied by law from contracts of agency or bailment.— Grover & Baker S. M. Co. v. Clinton, 5 Bissell 324, No. 5845 Fed. Cases; Keime v. Graff, No. 7650 Fed. Cases; Woodward v. Towne, 127 Mass. 41; Gibson v. Gorman, 44 N. J. Law 325.
Our conclusion is, that the discharge in bankruptcy was a payment, by operation of law, of the judgment against Boyd.
The status of the other plaintiffs in error is determined by sec. 16, chapter 3, Bankruptcy Act of 1898, which is as follows:
‘ ‘ The liability of a person who is codebter with, or guarantor, or in any manner a surety for a bankrupt, shall not be altered by the discharge of such bankrupt.” — Brandenburg on Bankruptcy, 526; Wolff v. Stix, 99 U. S. 1, 9; Hill v. Harding, 130 U. S. 699.
The judgment as to the plaintiffs in error, Rollan Sherman, C. T. Livermore and Henry F. Evans, is affirmed, and the cause remanded,- with instructions to the court below to modify the judgment' in such -manner as to give Boyd the benefit of his discharge in bankruptcy, as stated in this opinion, but to leave it, in all other respects, in force. •

Affirmed and Remanded.