UNITED STATES, for Use and Benefit of CRANE CO., v. JOHNSON, SMATHERS & ROLLINS, et al.

No. 3441.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1933.

Kester Walton, of Asheville, N. C. (Harkins, Van Winkle & Walton, of Asheville, N. C., on the brief), for appellant.

J. Bat Smathers, of Asheville, N. C. (Johnson, Smathers & Rollins, of Asheville, N. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This action at law was brought in the District Court in the name of the United States, for the use of Crane Company, against Murch Brothers Construction Company and Southern Surety Company of New York, to recover for material furnished in the construction of the United States post office and court house building in Asheville, N. C. The suit is based upon a contractor's performance bond, whereby the defendants, as contractor and surety, respectively, agreed to make prompt payment to all persons supplying the contractor with labor and material in the prosecution of the work; and the claim was that there was due and owing the Crane Company a balance of $6,440.45, with interest, for plumbing fixtures which it had furnished to Sluder Brothers of Asheville, with whom the contractor had entered into a subcontract. The answer of the defendants showed that the contractor had been paid by the United States the full amount of the contract price, and in turn had paid in full all sums due by it to every subcontractor performing work upon the building, including Sluder Brothers, and that whatever indebtedness was due to the Crane Company for material supplied in the construction of the building was due and owing by Sluder Brothers and not by the contractor; and that Sluder Brothers, as principal, and the Indemnity Insurance Company of North America, as surety, had executed a bond to the contractor for the performance of the subcontract between it and Sluder Brothers, and the payment of all material furnished and all labor performed under the subcontract. Thereupon Sluder Brothers and the Indemnity Insurance Company of North America were brought into the case as parties defendant, and the case proceeded against them as the sole defendants under an agreement between the parties that if the plaintiff was entitled to judgment against any of the defendants, it was entitled to judgment against the subcontractor and its surety only. Sluder Brothers admitted the purchase of materials from Crane Company for the Asheville building between September, 1929, and April, 1930, in the sum of $15,605.81, and alleged that they had paid the entire purchase price except the balance of $2,440.45, with interest, and that it had previously tendered the balance to Crane Company, which refused to accept it.

The sole question therefore in the case was whether the subcontractor was indebted for an additional sum of $4,000, claimed by the plaintiff. The answer of the defendants remaining in the case showed that a payment of $4,000 had been made by the subcontractor to the plaintiff on December 19, 1929, out of moneys paid by the contractor to the subcontractor for materials purchased for the Asheville building; that the plaintiff knew the source from which these payments had been derived, but nevertheless applied the $4,000 to another account for materials sold by the plaintiff to Sluder Brothers, and used by them in the performance of other work.

Upon these pleadings, and without denial by the plaintiff of the allegations in the answer as to the application of the payment, the case was submitted to the court and jury. The evidence showed that Sluder Brothers had had an open running account with Crane Company since February 8, 1924, and that on August 7, 1929, there was a balance due the Crane Company on this old account of $3,647.34; that on the last date named, Sluder Brothers made its first shipment of material under a contract of June 17, 1929, which they had with the board of education of Easley, S. C., to furnish materials to certain schoolhouses in that locality; that the total shipments on the Easley buildings from August 7 to November 9 amounted to $4,507.77, which were charged against this old regular account; that three payments were made by Sluder Brothers to Crane Company between September 8 and November 7, in the aggregate sum of $3,578.09, which were credited by Crane Company against the balance due it prior to the first shipments to the Easley buildings; that on July 12, 1929, the subcontract for the Asheville building was made and materials were shipped therefor by Crane Company to Sluder Brothers during the months of September, October, and November in the sum of $8,479.86; that the account for these materials was separated from the old account on November 7, 1929; and that later, on December 16, 1929, the contractor paid to the subcontractor the sum of $5,465, and out of the money so received Sluder Brothers paid $4,000 on December 19, 1929, to Crane Company. This payment was not credited to the Asheville account, but to the old account.

Sluder Brothers gave no instructions to Crane Company as to the account to which the payment should be applied, although there was circumstantial evidence from which the jury might have inferred that Sluder knew how the money was applied and made no protest. On the other hand, evidence on

behalf of Sluder Brothers tended to show that they did not know that the money had not been credited against the·materials shipped to Asheville. The evidence was conflicting also as to whether Crane Company knew the source from which the payment of $4,000 came; but there was substantial evidence tending to show that it did have such knowledge. The District Judge instructed the jury in substance that if Crane Company knew that the payment of $4,000 had been made to it by Sluder Brothers out of moneys which it had received from the contractor for materials furnished and work done upon the Asheville building, then the application of the payment by Crane Company to the old or regular account was wrongful, and the verdict should be limited to the sum of $2,440.45, even though the application of the money was made with Sluder Brothers' knowledge or concurrence; but that if the Crane Company did not know the source of the payment, then the Crane Company had the right to make the application in question and the verdict should be for it in the sum of $6,440.45. The jury found a verdict for the smaller sum.

■ Exceptions to this ruling form the basis of this appeal. It is contended that the peculiar circumstances of this case do not alter the general rule as to the application of payments; that the right belongs, in the first instance, to the debtor, and in the absence of a direction from him to the creditor, to apply a payment to any debt which the debtor may owe him, even though a surety is bound on one of the debts involved. See Maryland Casualty Co. v. City of South Norfolk (C. C. A.) 54 F.(2d) 1032, 1038; Grafton Hotel Company v. Walsh (C. C. A.) 228 F. 5; Bankers' Trust Co. v. T. A. Gillespie Co. (C. C. A.) 181 F. 448, 460; Ross v. Turner (C. C. A.) 259 F. 737, 751.

This rule, however, is not absolute when the surety involved has an equity in the money paid by the debtor, although the authorities are at variance as to the character of the equitable consideration in the surety's favor which deprives the debtor and creditor of election, and requires an application of the money to the guaranteed debt. Such an equity exists under the admitted facts of this case, in accordance with the rule announced by decisions in this and other federal circuits. We are in accord with these decisions in so far as they hold that when a surety is bound on one of several debts of the principal debtor to a creditor, and a payment is made by the debtor to the creditor with the identical money for the payment of which the surety is bound, or with the proceeds or fruits of the very contract, business, or transaction covered by the obligation of the surety, the application of the payment to some other debt, with or without the direction or consent of the debtor, does not bind the surety; at least if the source of the funds is known to the creditor or person receiving the payment. The surety in such case is entitled to have the payment applied to the debt for which he is bound. United States v. American Bonding & Trust Co. (C. C. A.) 89 F. 925; Columbia Digger Co. v. Sparks (C. C. A.) 227 F. 780; First National Bank v. National Surety Co. (C. C. A.) 130 F. 401, 66 L. R. A. 777; Harding v. Tifft, 75 N. Y. 461; Salt Lake City v. O'Connor, 68 Utah, 233, 249 P. 810, 49 A. L. R. 941, note; see also 21 A. L. R. 704, note; Hecox v. Citizens Insurance Company (C. C.) 2 F. 535; First National Bank v. Farmers' National Bank, 115 Okl. 136, 138, 241 P. 783; Boyd v. Agricultural Insurance Co., 20 Colo. App. 28, 76 P. 986.

There are decisions to the contrary upon which appellant relies, notably Standard Oil Company v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291, note, which distinguish between cases where the money paid is the identical money for the payment of which the surety is bound, and cases where the payment is made merely from the proceeds of the contract, business, or transaction covered by the obligation of the surety. In the latter class, it is said that a contractor, in the absence of an agreement, is not obliged to apply the money to the payment of laborers or materialmen connected with the work under the contract, but may employ it as he pleases, and hence the surety has no equitable interest therein which forbids the debtor or creditor, regardless of knowledge of the source of the money, to make any application which would be proper under the general rules prevailing where no surety is involved; and it is thought to be more in keeping with commercial stability and sound business to place the burden and risk upon the surety who has guaranteed the debt than upon the creditor to whom it is owed. See, also, Radichel v. Federal Surety Co., 170 Minn. 92, 212 N. W. 171; People, for Use of Hirth, v. Powers, 108 Mich. 339, 66 N. W. 215; Mack v. Colleran, 136 N. Y. 617, 32 N. E. 604; Grover v. Board of Education, 102 N. J. Eq. 415, 141 A. 81; Crane Company v. U. S. F. & G. Co., 74 Wash. 91, 132 P. 872; Bankers' Surety Company v. Maxwell (C. C. A.) 222 F. 797. These considerations are not without weight, but, in our view, it places no burden or hardship upon a creditor who has

knowledge of the source of the money to require him to apply the payment to the guaranteed debt, while the contrary practice involves an injustice to the surety which the parties to the contract may easily avoid. So far as the decision of this court in Bankers' Surety Co. v. Maxwell, supra, is at variance with the rule followed in the pending case, it may no longer be regarded as authoritative.

The appellant's argument is not based solely upon the rule laid down by the authorities last cited, for there is another circumstance in this case which in its view offsets the right which the surety enjoys, even under the rule more favorable to it, to have money derived from the contract, for which it is responsible, applied to the liquidation of the debt incurred. The Indemnity Insurance Company was not only surety for Sluder Brothers upon the Asheville contract, but was also surety upon the bond of Sluder Brothers given for the faithful performance of the contract and the payment of the bills incurred for the construction of the school buildings at Easley, S. C., and it is strongly urged that the surety was relieved of its obligation on the Easley contract to the extent of $4,000 by the application of the payment, and hence should not now be relieved from the payment of the like sum on the Asheville contract. This unusual circumstance, it is said, completely destroys the equity in the surety's favor. The pleadings in the case did not raise this question; nor did the plaintiff in the court below request any instructions from the District Court in this respect. Nevertheless the effect of the instruction of the District Judge limited the consideration of the jury to the question of knowledge on the part of the Crane Company as to the origin of the fund of $4,000, and it may be assumed, for the purpose of this decision, that the jury were instructed that the actions of the parties with reference to the Easley contract and bond did not affect the right of the surety to have the $4,000 payment applied to the materials furnished to the Asheville building.

There is force in the appellant's argument, and it might well prevail if it had appeared that the relative rights of the parties were the same under both contracts so that the surety got the same benefit from the payment of $4,000 as if it had been applied to the Asheville contract, or that the surety in the event of a suit by the creditor on the South Carolina contracts would have been limited to the same defenses as in the present suit. The evidence, however, did not establish such a situation. On the contrary, it was shown by witnesses for the plaintiff that it applied the payment of $4,000 on the regular account because it had information that other materialmen were giving notice of their liens on the South Carolina work, and that in the fall of 1930, before the present suit was brought, when the surety requested that the application of the payment of $4,000 be transferred to the Asheville account, as a credit, the lien of Crane Company on the South Carolina contracts had already expired. It may be that there was no actual basis for the apprehension of the Crane Company that it had lost its rights by limitation under the Easley contracts, but no evidence was introduced to dispel the doubt thus raised.

Moreover, the evidence tends to show that moneys received by the subcontractor for work done on the Easley contract were applied by Crane Company to the liquidation of the earlier unsecured account. We have seen that during the period in the fall of 1929 when the Easley contract was in the course of performance, Sluder Brothers made three payments aggregating $3,578.09 to Crane Company, which it applied as a credit upon the earlier items, and not against the materials furnished under the Easley contract. The source from which Sluder Brothers derived these moneys is not clearly shown by the evidence, but it indicates that at least a part thereof was received by them from the Easley authorities. Hence it appears that a part of the Easley money was used to liquidate the earlier unsecured account, just as later a part of the Asheville money was used to pay the Easley account. The evidence does not establish this conclusion to a certainty, but on the other hand it is far from showing that none of the Easley money was used to liquidate the older account, or that the Crane Company was ignorant of the source from which the money came. It was incumbent upon the plaintiff, if it would take the case out of the approved rule applicable to the rights of sureties upon a contract for performance, at least to produce such facts as would show that the right of the surety to the proper application of the payments had been substantially recognized. This burden, however, was not met, and the established rule must therefore be applied, and the judgment of the District Court affirmed. However, it must be understood that the judgment in this case does not preclude a recovery by the Crane Company from Sluder Brothers of the balance due it on the prior account.

Affirmed.