UNITED STATES of America, for the Use and Benefit of Irving WOLTHER, Plaintiff,

v.

NEW HAMPSHIRE FIRE INSURANCE CO. and Seacoast Repair Co., Inc., as Debtor in Possession Pursuant to Chapter XI of the Bankruptcy Act, Defendants.

UNITED STATES of America, for the Use and Benefit of Irving WOLTHER, Plaintiff,

v.

HOME INDEMNITY COMPANY and Seacoast Repair Co., Inc., as Debtor in Possession Pursuant to Chapter XI of the Bankruptcy Act, Defendants,

HOME INDEMNITY COMPANY, Third-Party Plaintiff,

v.

NEW HAMPSHIRE FIRE INSURANCE COMPANY and Charter Electric Co., Inc., Third-Party Defendants.

Civ. Nos. 16717, 16718.

United States District Court
E. D. New York.
May 29, 1959.

See also 147 F.Supp. 686.

Harry Malter, New York City, for plaintiff.

Edward R. Wolff, New York City, for defendant and third-party plaintiff, The Home Indemnity Company.

David Halper, Brooklyn, N. Y., and Allen A. Backer, Manchester, N. H., for defendant and third-party defendant, New Hampshire Fire Insurance Company, and third-party defendant, Charter Electric Co., Inc.

ZAVATT, District Judge.

These are two suits on two Miller Act payment bonds, 40 U.S.C.A. § 270(a)(2). After New Hampshire Fire Insurance Company and Charter Electric Co., Inc., were made third-party defendants in Action No. 16718 pursuant to an order of this court dated August 17, 1956, the two suits were consolidated by an order of this court made and filed December 29, 1958. The third-party defendant, Charter Electric Co., Inc., was not served with a copy of the third-party summons or the third-party complaint and has not appeared. The defendant, Seacoast Repair Co., Inc., is in default of appearance and pleading and took no part in the trial. The defendant, Seacoast, filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and was later adjudicated bankrupt in September, 1958.

In action No. 16717 the use plaintiff is suing the defendant, Seacoast Repair Co., Inc., as the contractor and the defendant, New Hampshire Fire Insurance Company, as the surety, pursuant to 40 U.S.C.A. § 270b, claiming a balance due of $16,500. In action No. 16718 the use plaintiff is suing the same contractor and its surety, The Home Indemnity Co., on a separate bond pursuant to 40 U.S.C.A. § 270b, claiming a balance due of $22,080. In action No. 16718 the Home Indemnity Company is suing New Hampshire Fire Insurance Company for the sum of $14,755 which it claims should have been credited to the contractor with reference to the contract covered by its surety bond, whereas the said sum of $14,755 is claimed to have been improperly credited to the contract covered by the surety bond of the third-party defendant, New Hampshire Fire Insurance Company. In each of these actions the use plaintiff claims to be the assignee of the contractor's subcontractor, Charter Electric Co., Inc., hereinafter referred to as Charter.

In action No. 16717 the surety denies all of the material allegations of the complaint and pleads, affirmatively, payment and estoppel. In action No. 16718 the surety denies all of the material allegations of the complaint and pleads a set-off for sums which it claims the subcontractor received from the contractor that should have been credited to the improvement covered by its surety bond but which were improperly credited by the subcontractor to the improvement covered by the surety bond of the New Hampshire Fire Insurance Co. It also pleads as a counterclaim that it is entitled to judgment against the use plaintiff in the sum of $14,755, because the use plaintiff so improperly applied payments received from the contractor. In action No. 16718 the third-party plaintiff (Home) demands judgment against the third-party defendant (New Hampshire) in the sum of $14,755, claiming that payments totaling that amount, which should have been credited by the subcontractor and the plaintiff to the improvements covered by its bond, were improperly credited to the improvements covered by the bond of the third-party defendant.

On the trial both surety companies stipulated that the subcontractor did all of the work required to be done by it under each of its subcontracts with the contractor; that written notice was given to the contractor within ninety days from the date when the subcontractor performed the last of the labor and furnished the last of the material for which the respective claims are made by the use plaintiff in each action, all as required by § 270b, and that each suit was commenced by the use plaintiff within one year after the date of final settlement of each contract between the contractor and the National Shipping Authority of the United States Department of Commerce, hereinafter referred to as the Government. On the trial, Home and New Hampshire stipulated that the third-party action of Home against New Hampshire be adjourned to a date for trial thirty days after the final determination of the issues between the use plaintiff and these two sureties and that the minutes of the trial of the said is-

sues may be offered in evidence on the trial of the third-party action.

Home and New Hampshire, as defendants, claim that the assignments by the subcontractor to the use plaintiff are invalid and that, therefore, he has no capacity to sue them on their payment bonds. Home, as a defendant, claims that the subcontractor received payments from the contractor to the extent of $14,755 with knowledge that they derived from the contract between the contractor and the Government covered by its payment bond and that the subcontractor was under a duty to credit those payments to his subcontract with the contractor relating to that contract; that, because the subcontractor credited those payments to a subcontract with the contractor relating to a contract between the contractor and the Government covered by the payment bond of New Hampshire, Home is entitled to set off the sum of $14,755 against any sum found due to the use plaintiff in action No. 16718 or, in the alternative, to judgment in that amount against the use plaintiff, if the use plaintiff has the capacity to sue as assignee of the subcontractor.

After a trial to the court without a jury, the court makes the following findings of fact:

## Findings of Fact

1. On March 1, 1954 the United States of America (hereinafter referred to as the Government) entered into a master contract with the contractor for the repair and alteration of its vessels. This contract, designated as contract No. M.S.T.–3096, established the terms upon which the contractor agreed to effect repairs, completions, alterations of and additions to vessels and parts thereof of the Government under job orders to be issued thereunder from time to time. The contractor agreed to furnish all necessary material, labor, services, equipment and such other things and services as would be necessary to accomplish the work specified in each job order and agreed that, prior to the commencement of the work specified in any job order, it would furnish a performance or payment bond, or both, if required by the Contracting Officer.

2. Pursuant to the master contract, the Government issued separate job orders to the contractor for the repair of each of the following vessels and payment bonds were furnished by the contractor, pursuant to the master contract and 40 U.S.C.A. § 270a(a) (2), in each of which the contractor was the principal and the defendants, Home and New Hampshire, were sureties as follows:

| Job Order No. | Vessel | Surety |
| --- | --- | --- |
| 3 | U.S.N.S. Lt. James Robinson | Home |
| | U.S.N.S. Hodges | Home |
| 2 | U.S.N.S. Sgt. Jonah Kelley | New Hampshire |
| | U.S.N.S. Golden Eagle | New Hampshire |

3. The contractor issued job orders to the subcontractor to furnish labor and materials necessary to complete certain items under its job orders as follows:

| Date of Job Order | Vessel | Agreed Price |
| --- | --- | --- |
| May 13, 1955 | U.S.N.S. Sgt. Jonah Kelley | $16,500 |
| June 22, 1955 | U.S.N.S. Lt. James Robinson | 22,080 |
| | U.S.N.S. Golden Eagle | 22,475 |
| June 14, 1955 | U.S.N.S. Golden Eagle | 280 |

4. The subcontractor duly furnished all of the labor and material necessary to complete each of said purchase orders and the labor so performed and the materials so furnished under each of said purchase orders were performed and furnished in the prosecution of the work provided for in the master contract and the job orders between the Government and the contractor with reference to the Robinson, Kelley and Golden Eagle. Work on the Golden Eagle was completed during the latter part of June, 1955. Work on the Kelley started on May 14, 1955 and was completed on or about July 19, 1955. Work on the Robinson started on June 22, 1955 and was completed on or about July 20, 1955.

5. No labor or materials were furnished by the subcontractor with reference to the U.S.N.S. Hodges.

6. On December 1, 1947, before Charter received or performed any of the purchase orders from the contractor with reference to the Kelley, Robinson or Golden Eagle, it entered into an agreement in writing with the use plaintiff by the terms of which the use plaintiff agreed to purchase as "absolute owner" "acceptable accounts receivable and other choses in action" from Charter; to pay Charter 75% thereof and to pay the remaining 25% of each account so purchased (less interest and expenses) after he received payment in full of the balance thereof. As to accounts so purchased, Charter agreed to provide the use plaintiff with an assignment. The agreement provided that all accounts so sold by Charter "shall be the property of" the use plaintiff. As to accounts so purchased, Charter was given the power to collect for the use plaintiff "any purchased accounts receivable", "assigned receivables" and all collections so received by Charter (the identical checks, monies or other forms of payment received by Charter) were to be held as the property of and immediately delivered to the use plaintiff. As to any receivable of Charter so sold by Charter and and not paid, Charter agreed to repay the use plaintiff "promptly for any advances made against such receivable." Nevertheless every unpaid receivable as to which Charter repaid the use plaintiff or which the use plaintiff charged back to Charter was to remain the property of the use plaintiff until Charter had fully reimbursed him for all receivables so purchased by the use plaintiff who had the right to retain that account as collateral for the obligations of Charter to him, whether those obligations arose under the agreement or otherwise. The use plaintiff had the right to notify Charter's customers that their receivables had been so sold and assigned and to collect the same directly in his own name and charge the collection expenses to Charter. Money coming into the use plaintiff's possession under the agreement could be applied by the use plaintiff to any obligation which Charter might at any time owe to the use plaintiff "whether arising under this agreement or not."

7. Charter assigned to the use plaintiff in writing pursuant to the agreement of December 1, 1947, the monies due and to become due to it under said purchase orders as follows:

| Date of Assignment | Vessel | | Amount |
|---|---|---|---|
| May 16, 1955 | U.S.N.S. Sgt. Jonah Kelley | | $16,500 |
| July 5, 1955 | " | " | " |
| July 7, 1955 | " | " | " |
| June 27, 1955 | U.S.N.S. James Robinson | | 22,080 |
| May 24, 1955 | U.S.N.S. Golden Eagle | | 22,475 |
| June 6, 1955 | " | " | " |
| June 13, 1955 | " | " | 280 |

In each of these assignments Charter agreed to deliver to the use plaintiff all checks received by Charter from the contractor on the respective assigned accounts.

8. On May 18, 1955 the use plaintiff notified the contractor in writing that it was the factor of Charter, and on or about the following dates the contractor was notified that Charter had assigned its accounts under the purchase orders to the use plaintiff as follows:

| Notice by: | Date of Notice | Account | Amount |
|---|---|---|---|
| Use Plaintiff | May 18, 1955 | U.S.N.S. Sgt. Jonah Kelley | $16,500 |
| Charter | June 6, 1955 | U.S.N.S. Golden Eagle | 22,475 |
| Charter | June 13, 1955 | U.S.N.S. Golden Eagle | 22,475 |
| Charter | June 13, 1955 | U.S.N.S. Golden Eagle | 280 |
| Charter | July 7, 1955 | U.S.N.S. Lt. James Robinson | 22,080 |

In each such notice, the contractor was requested to pay to the use plaintiff Charter's invoices billed to the contractor with reference to the assigned accounts.

9. Charter billed the contractor for the work done under each purchase order as follows:

| Date of Invoice | Vessel | Amount |
|---|---|---|
| June 6, 1955 | U.S.N.S. Golden Eagle | $22,475 |
| June 13, 1955 | U.S.N.S. Golden Eagle | 280 |
| July 5, 1955 | U.S.N.S. Sgt. Jonah Kelley | 16,500 |
| July 7, 1955 | U.S.N.S. Lt. James Robinson | 22,080 |

10. The contractor had several job orders under the master contract in addition to and simultaneously with those listed in Finding No. 2. It maintained only one checking account into which it deposited and mingled all monies received from the Government under all of its job orders, loans from its officers, loans and refunds from its factor, Mt. Etna Trading Company, and monies received from all other sources.

11. The contractor made payments by checks drawn against this account to the order of its creditors, including its subcontractors, without reference to the source thereof. As to the payments made to Charter, it paid Charter's invoices in the order in which it received them; agreed with Charter on account of which invoice each check was being paid and noted each such payment accordingly on the appropriate invoice.

12. The contractor made payments to Charter by check on account of Charter's invoices with reference to the following purchase orders, all of which checks were

delivered immediately by Charter to the use plaintiff who (with authority) endorsed the same and deposited the same in his own account:

| Date of Payment | Purchase Order | Amount of Check |
| --- | --- | --- |
| June 17, 1955 | U.S.N.S. Golden Eagle | $10,000 |
| June 27, 1955 | U.S.N.S. Golden Eagle | 4,000 |
| June 29, 1955 | U.S.N.S. Golden Eagle | 3,000 |
| July 8, 1955 | U.S.N.S. Golden Eagle | 4,755 |
| | | $21,755 |
| July 8, 1955 | U.S.N.S. Sgt. Jonah Kelley | $ 6,000 |
| July 12, 1955 | U.S.N.S. Sgt. Jonah Kelley | 4,000 |
| Aug. 30, 1955 | U.S.N.S. Sgt. Jonah Kelley | 2,000 |
| Sept. 7, 1955 | U.S.N.S. Sgt. Jonah Kelley | 2,000 |
| Sept. 9, 1955 | U.S.N.S. Sgt. Jonah Kelley | 2,000 |
| | | $16,000 |
| Sept. 28, 1955 | U.S.N.S. Lt. James Robinson | $ 2,000 |
| Oct. 6, 1955 | U.S.N.S. Lt. James Robinson | 3,000 |
| Oct. 31, 1955 | U.S.N.S. Lt. James Robinson | 2,000 |
| Dec. 5, 1955 | U.S.N.S. Lt. James Robinson | 1,500 |
| | | $ 8,500 |

13. The net amount of the purchase orders with reference to the Golden Eagle after credits (as stipulated by the parties) was $21,755. The payment of that amount by the contractor as set forth in Finding No. 12 paid those purchase orders in full, if Charter and the use plaintiff had the right to allocate those payments to the Golden Eagle purchase orders.

14. The net amount of the purchase order with reference to the Kelley after credits (as stipulated by the parties) was $16,000. The payment of that amount by the contractor as set forth in Finding No. 12 paid that purchase order in full, if Charter and the use plaintiff had the right to allocate those payments to the Kelley account.

15. The parties stipulated that, if any money is due to the use plaintiff with reference to the assignment to him of the Robinson account, it is no more than $13,280. If Charter and the plaintiff had the right to allocate all of the payments made by the contractor on all of the purchase orders as set forth in Finding No. 12, the amount unpaid on the Robinson purchase order is $13,280.

16. Neither Charter nor the use plaintiff knew or had reason to believe that the payments made by the contractor and allocated as set forth in Finding No. 12 derived from monies received by the contractor from the Government with reference to job orders unrelated to the purchase orders to which said payments were so allocated.

There can be little doubt as to the standing of the assignee of a subcontractor protected by a Miller Act bond to maintain an action upon the bond in its own name, and without joining the subcontractor-assignor as a party plaintiff. Such an action could have been brought under the Heard Act of 1894, 28 Stat. 278, the predecessor of the Miller Act. In United States to Use of Fidelity

National Bank of Spokane, Wash. v. Rundle, 9 Cir., 1900, 100 F. 400, at page 403, the court stated the following with regard to this question:

" * * * Therefore, for the error already pointed out, the judgment must be reversed, and the cause remanded for a new trial, unless it be, as contended on behalf of the defendants in error, that the obligation sued on was limited to the laborers and material men personally, and that their rights in respect to it could not pass by assignment. This is too narrow a construction of the legislation in question. We agree with what was said by the court in the case of U. S. [to Use of Anniston Pipe & Foundry Co.] v. National Surety Co., [92 Fed. 549 (8th Cir. 1899)]. supra, regarding its purpose, that congress thereby intended 'to afford full protection to all persons who supplied materials or labor in the construction of public buildings or other public works, inasmuch as such persons could claim no lien thereon, whatever the local law might be for the labor and materials so supplied. There was no occasion for legislation on the subject to which the act relates, except for the protection of those who might furnish materials or labor to persons having contracts with the government.' See, also, U. S. [to Use of Sica] v. Kimpland (C.C.) 93 Fed. 403. The general rule is that an assignment of a debt carries with it the security. The application of this general principle to such cases as the present accords with the obvious purpose of the statute, while the limited construction contended for by the defendants in error might very well deprive those for whom the security was intended from realizing on their claims by assignment."

The Supreme Court recognized that assignees of the claims of persons who furnish labor or material came within the protection of the bond given pursuant to the Heard Act. Title Guaranty & Trust Co. of Scranton, Pa. v. Crane Company, 1910, 219 U.S. 24, 35, 31 S. Ct. 140, 142, 55 L.Ed. 72; United States Fidelity & Guaranty Co. v. United States for Benefit of Bartlett, 1913, 231 U.S. 237, 243, 34 S.Ct. 88, 90, 58 L.Ed. 200; see United States for Benefit and on Behalf of Sherman v. Carter, 1957, 353 U. S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776. The last case cited leaves no question but that the instant action is properly brought by the use plaintiff. There, in an action under the Miller Act, the Supreme Court stated, 77 S.Ct. 793 at page 798:

"The surety also argues that the trustees are not entitled to recover the promised contributions under § 2(a) of the Miller Act, since they are neither persons who have furnished labor or material, nor are they seeking 'sums justly due' to persons who have furnished labor or material. An answer to this contention is found in cases arising under the Heard Act involving suits by assignees of the claims of persons furnishing labor or material. Such assignees were not the persons who had furnished the labor or material for which the claims were made. They did not seek 'sums justly due' to persons who had themselves furnished labor or material, since the assignments had extinguished the right which those persons had to the performance of the contractors' obligation. Yet these cases established that assignees of the claims of persons furnishing labor or material came within the protection of the statutory bond. It was pointed out that a denial of an assignee's right to sue on the bond might deprive those for whom the security was intended of a fair chance to realize upon their claims by assignment. There is nothing in the language, legislative history, or related decisions to indicate that Congress intended to overturn these cases when

it replaced the Heard Act with the broader and more liberal provisions of the Miller Act."

Section 41 of the Personal Property Law, McKinney's Consol.Laws, c. 41, of the State of New York provides that subject to certain stated exceptions, not here relevant, any claim or demand can be transferred, and the transfer thereof passes an interest which the transferee may enforce by an action in his own name. In Titus v. Wallick, 1939, 306 U.S. 282, 59 S.Ct. 557, 83 L.Ed. 653, the Supreme Court observed, 59 S.Ct. 557 at pages 559, 561:

"Choses in action, with exceptions not now material, are made freely assignable by the New York statute. Personal Property Law, Chapter 41, § 41, Consolidated Laws of New York. Section 210 of the New York Civil Practice Act provides 'Every action must be prosecuted in the name of the real party in interest, except that * * * a trustee of an express trust * * * may sue without joining with him the person for whose benefit the action is prosecuted.' By repeated decisions of the highest court of the State of New York it has long been settled that under these sections any form of assignment which purports to assign or transfer a chose in action confers upon the transferee such title or ownership as will enable him to sue upon it. This is true even though the assignment is for the purpose of suit only and the transferee is obligated to account for the proceeds of suit to his assignor. [Citing cases.]"

Where the transfer of a chose in action appears on its face to be an absolute assignment and there is no recital that the transfer is merely for purposes of suit the assignee is clearly a proper party in interest to bring suit on the chose in action. Heitzmann v. Willys-Overland Motors, Inc., D.C.E.D.N.Y.1946, 68 F. Supp. 873. As stated in Spencer v. Standard Chemicals & Metals Corp'n, 1924, 237 N.Y. 479, at pages 480–481,

143 N.E. 651, 652, an assignee is the real party in interest for the purpose of bringing suit if he has some title, legal or equitable, to the thing assigned. "The consideration paid, the purpose of the assignment, the use to be made of any proceeds collected, is immaterial." It follows, therefore, that there is no merit to the defendants' claim that the use plaintiff lacks standing to sue because it has been substantially paid by Charter for moneys advanced to it.

The fact that Charter had the power to collect "purchased" and "assigned receivables", subject to holding such collections as the property of, and immediately delivering the same to, the use plaintiff, did not vitiate the assignment of the receivables. In making collections, Charter acted in a fiduciary capacity, and the money, when collected, became the specific property of the use plaintiff. Cf., In re Leterman, Becher & Co., Inc., 2 Cir., 1919, 260 F. 543, 546, certiorari denied 1919, 250 U.S. 668, 40 S.Ct. 14, 63 L.Ed. 1198; Benedict v. Ratner, 1925, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991.

It thus appears that whether the problem is viewed in the light of federal decisions which have construed the Heard and Miller Acts, or whether reference is had to the law of the State of New York, the use plaintiff is entitled to maintain this action, and there is no impairment of its right to sue by reason of Charter having made substantial payments to the use plaintiff of moneys advanced to it or by reason of the fact that Charter had the power to collect the receivables as the agent of the use plaintiff.

Inasmuch as neither Charter nor the use plaintiff knew or had reason to believe that the payments made by the contractor derived from monies received by the contractor from job orders unrelated to the purchase orders to which said payments were allocated by Charter, Charter properly applied the monies to the payment of such debts owing by the contractor as agreed upon

by Charter and the contractor. Equitable considerations have been held to limit the power to control the application of payments, insofar as the interest of a surety is affected, only where the creditor who receives payment knows where the money is coming from. United States for Use of Carroll v. Beck, 6 Cir., 1945, 151 F.2d 964, 166 A.L.R. 637; R. P. Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 1940, 112 F.2d 150, 130 A.L.R. 192, certiorari denied 1940, 311 U.S. 700, 61 S.Ct. 139, 85 L.Ed. 454; United States for Use and Benefit of Crane Co. v. Johnson, Smathers & Rollins, 4 Cir., 1933, 67 F.2d 121. In the last case cited it is indicated that the general rule as to the application of payments is that the right belongs, in the first instance, to the debtor. In the absence of a direction from the debtor the right belongs to the creditor to apply a payment to any debt which the debtor may owe him, even though a surety is bound on one of the debts involved. The court then states:

"This rule, however, is not absolute when the surety involved has an equity in the money paid by the debtor * * *. We are in accord with [decisions which hold] that when a surety is bound on one of several debts of the principal debtor to a creditor, and a payment is made by the debtor to the creditor with the identical money for the payment of which the surety is bound, or with the proceeds or fruits of the very contract, business, or transaction covered by the obligations of the surety, the application of the payment to some other debt, with or without the direction or consent of the debtor, does not bind the surety; *at least if the source of the funds is known to the creditor or person receiving the payment.*

The surety in such case is entitled to have the payment applied to the debt for which he is bound." 67 F. 2d 121, 123 (Emphasis supplied).

It thus appears to be the law that in the absence of notice of the source of the payments to Charter, it properly applied the payments as it did. See the opinion of Judge Galston upon the plaintiff's motion for summary judgment, D.C.E.D.N.Y.1957, 147 F.Supp. 686.

The court need not consider what the result would have been in the event Charter had notice of the source of the funds from which the contractor made payments, cf., F. H. McGraw & Co. v. Milcor Steel Co., 2 Cir., 1945, 149 F.2d 301.

### Conclusions of Law

1. The court has jurisdiction of the subject matter of these consolidated actions and of all the parties except Charter Electric Co., Inc.

2. The two actions brought by the use plaintiff are timely after timely notices pursuant to 40 U.S.C.A. § 270b.

3. The assignments by Charter to the use plaintiff are valid and the use plaintiff has the right to sue Home and New Hampshire on their respective payment bonds.

4. The defendant, New Hampshire Fire Insurance Co., in Action No. 16717 is entitled to judgment dismissing the complaint without costs.

5. The use plaintiff is entitled to judgment in Action No. 16718 against the defendants, Home Indemnity Company and Seacoast Repair Co., Inc., in the sum of $13,280 with interest and costs.

Settle order within 15 days of the date of this opinion together with such proposed additional findings of fact and conclusions of law as the parties deem necessary.