O’NIELL, O. J.
 

 This is a eoncursus proceeding in settlement of the unpaid claims for work done and materials furnished in the construction of a highway through the parish of Jefferson. The only matter in dispute is
 
 *919
 
 the liability, or extent of liability, of the Southern Surety Company, as surety on the bond of the contractor, Paxton Millér, to the several claimants for work done or materials furnished.
 

 Miller’s contract was with the state of Louisiana and the parish of Jefferson, and was governed by the provisions of Act No. 224 of 1918. Accordingly, the contractor’s bond guaranteed the faithful performance of the contract and the payment by the contractor and all subcontractors for all work done, labor performed and material furnished in the construction of the road.
 

 Miller failed to complete the work; and the surety company took it over and completed it at the cost of $19,708.24, and received from the state highway department $16,067.58, leaving a balance of $3,640.66, which the surety company claims out of the fund deposited by the state in the registry of the court. The amount deposited, being the balance due under the contract, is $10,-247.96, which is not of itself sufficient, but which, with the amount of the bond, is sufficient, to pay all outstanding claims for labor and material.
 

 The 'district court gave judgment ordering the deposit of $10,247.96 (less a fee of $750 to be paid- the commissioner) distributed pro rata among the following named eight claimants, defendants in the suit, and gave judgment in their favor and against the contractor and the surety company, in solido, for the balance which would then remain due on the amount allowed each of them, viz.:
 

 (1)Interstate Trust & Banking Company, as assignee and subrogee of the claims of several laborers and furnishers of material, $15,804.68, with interest at 5 per cent, from the 27th of May, 1922;
 

 (2) Prentice E. Edrington, as assignee and subrogee of the claims of several laborers, $2,107.18, with interest at 5 per cent, from the 26th of April, 1923, and 10 per cent, attorney’s fees;
 

 (3) John T. Gibbons, for materials furnished, $1,437.66, with interest at 5 per cent, from the 11th of May, 1922, and 10 per cent, attorney’s fees;
 

 (4) Eelix & Block, for .materials furnished, $61.88, with interest at 5 per cent, from the 22d of May, 1922;
 

 (5) Kenner Lumber Company, for materials furnished, $548.83, with interest at 5 per cent, from the 31st of May, 1922, and 10 per cent, attorney’s fees;
 

 (6) Jahncke Service, Inc., for materials furnished, $1,858.33, with interest at 5 per cent, from the 31st of May, 1922, and 10 per cent, attorney’s fees;
 

 (7) Ole K. Olsen, for materials furnished, $903.29, with interest at 5 per cent, from the 9th of March, 1923, and 10 per cent, attorney’s fees; and
 

 (8) Stanley A. Stewart, for materials furnished, $67.85, with interest at 5 per cent, from the 19th of March, 1923, and 10 per cent, attorney’s fees.
 

 As the surety company is the only party appealing from the judgment, it is not subject to reversal or amendment in any respect except that the liability of the surety company to the eight parties above named, or to any of them, is subject to reduction. In all other respects the judgment appealed from is final.
 

 It is admitted by counsel for appellant that the judgment in favor of Ole K. Olsen, for $903.29, with interest at 5 per cent, per annum from the 9th of March, 1923, and 10-per cent, attorney’s fees, is correct. ■ The bill
 
 *921
 
 represents the price of steel sold to the contractor and .used in the reinforcement of concrete in the construction of the road. The claim therefore represents the price of material which actually went into and formed part of the construction. The 10 per cent, attorney’s fee was properly al-lo-wed because the claimant made amicable demand on the contractor and his surety and 30 days elapsed thereafter without payment being made, before suit was filed, and the claimant got judgment for the full amount of his claim. He complied, therefore, with the conditions on which alone the statute (section 8 of Act 224 of 1918) declares that a claimant for material furnished or work done on a public road or other public work shall be allowed 10 per cent, attorney's fee on the amount of his claim.
 

 It is admitted also by counsel for appellant that the judgment in favor of Ken-ner Lumber Company for $548.83, with interest at 5 per cent, per annum from the 31st of May, 1922, is correct; but it is denied that the company is entitled to the attorney’s fee, because there is no proof that a demand for payment was made upon the contractor 30 days before judicial demand. In fact there is no proof that amicable demand was made upon the contractor at any time. There is proof that amicable demand was made upon the surety 30 days before the litigation arose; but the statute requires that such demand, without avail, shall be made upon both the contractor and the surety on his bond, in order that the claimant may be allowed the attorney’s fee. The allowance of the attorney’s fee, under section 8 of Act 224 of 1918, is in the nature of a penalty, which should not be imposed unless the claimant has complied literally with the requirements of the statute. In Silver v. Harriss, 165 La. 97, 115 So. 380, 381, it was said:
 

 “Plaintiff also prays for an amendment of the judgment so as to award him the attorneys’ fees demanded in his petition. Our conclusion is that he is not entitled to this relief. Section 8 of Act 224 of 1918, under which the claim is asserted, requires as a condition precedent for a recovery thereon that an amicable demand should have been made * * * prior to the institution of the suit. No such demand was made. The service upon the principal and the surety of copies or duplicates of the sworn statement prepared for filing with the authorities for whom the work was done and for recordation in the mortgage records of the parish in accordance with other sections of the statute is not the amicable demand required.”
 

 For the reason stated, the attorney’s fees allowed Jahncke Service, Inc., and Prentice E. Edrington are contested and must be rejected. Neither of these claimants made amicable demand upon the contractor 30 days before the litigation arose. The demand upon the surety- was not sufficient. Besides, Edrington did not recover all that he demanded of the surety, because his demand included 8 per cent, per annum interest on the amount of his claim, and he was entitled to and was allowed only 5 per cent, interest. He directs our attention to the fact that, in the instrument by which the laborers transferred their claims to him, the contractor acknowledged that the claims were due; hence Edrington argues that it would have been a vain and useless proceeding for him to make amicable demand upon the contractor for the payment of the claims. The presumption that a demand upon the contractor would be without avail does not dispense with the necessity of making the demand as a condition precedent to condemning the surety to pay the penalty of attorney’s fees.
 

 
 *923
 
 The claim of Jahneke Service, Inc., is contested on the further ground that there is not sufficient proof that the materials furnished actually went into the construction of the road. The materials consisted of cement, sand and gravel, all of which were delivered to the contractor for use in the construction of the road, and the evidence leaves no doubt that the materials were actually so used. The judgment, therefore, in favor of Jahneke Service, Inc., must be affirmed, except as to the attorney’s fee, which must be rejected.
 

 The claim of Prentice E. Edrington, aside from his attorney’s fee, is contested on another ground, which will be considered in connection with the claim of the Interstate Trust & Banking Company.
 

 The claim of John T. Gibbons, for $1,437.66, and that of Eelix & Block, for $61.-88, and that of Stanley A. Stewart, for $67.-85, are not for materials that went into the construction of the road, and therefore must be rejected, as far as the surety company is concerned, under authority of Silver v. Harris, 165 La. 83, 115 So. 376; Red River Construction Co. v. Pierce Petroleum Corporation, 165 La. 565, 115 So. 752; State v. Smith, 167 La. 301, 119 So. 56; and John H. Murphy Iron Works v. United States Fidelity & Guaranty Co., 169 La. 163, 124 So. 768. The claim of John T. Gibbons is for feed sold to the contractor and used for feeding his mules while they were working on the road. The claim of Felix & Block is for articles of merchandise sold to laborers for their personal use, while they were working on the road, but not for use in the construction of the road. The claim of Stanley A. Stewart is for oil and gasoline sold to the contractor and used for operating his tractors and trucks in the construction of the road. In the Red River Construction Company’s Case it was held that the surety on the contractor’s bond, under Act 224 of 1918, was not liable for the price of oil and gasoline sold to the contractor for use in the operation of his trucks and tractors; and the same must be said of the price of feed used by the contractor for feeding his mules while working on the road. The law was amended in that respect by Act No. 271 of 1926, but the amendment was not a'dopted in time to apply to the Red River Construction Company’s Case or to this ease. Counsel for John T. Gibbons cite the case of Miller v. Bonner, 163 La. 332, 111 So. 776, where it was held that the surety on a subcontractor’s bond was liable for claims for repairing wagons and road machines used in the construction of the road, claims for doctoring sick mules, and claims for feed sold to the contractor and fed to the mules while working on the road. In that case it was held that Act No. 49 of 1910, which governed the case, did not require a subcontractor to give bond in favor of the contractor, and therefore, that the bond so given was not a statutory bond, but a conventional obligation, which, according to its terms, boünd the surety for the payment of all
 
 supplies
 
 as well as materials sold to the subcontractor. At any rate, this case is governed by the later decision, in Red River Construction Co. v. Pierce Petroleum Corporation, construing Act No. 224 of 1918.
 

 Accordingly, the claim of the Interstate Trust & Banking Company against the surety company for $15,804.68 must be reduced by the sum of $4,645.08, which represents sub-rogations to claims for mule feed, tools and implements, automobile service, oil and gasoline used for operating the trucks and tractors, and other such supplies. The bank’s claim of $15,804.68 is made up of claims bought from parties who furnished such sup
 
 *925
 
 plies, amounting to $4,645.08, and claims bought from laborers, amounting to $8,620.-S5, and claims bought from furnishers of materials that went into the construction of the road, amounting $2,538.15. The bank’s claim must be reduced, therefore, to $11,159.-60; and, as thus reduced, the claim is subject to other defenses on the part of the surety company, presenting questions of law, which we will consider now.
 

 The first defense urged against the bank’s claim is the contention that the sworn statements which were served upon the state highway department and recorded in the mortgage records of Jefferson parish were not valid, because they were not sworn to by the laborers who did the work, or by the parties who furnished the materials, but were sworn to by Paxton Miller, the contractor. The answer to the argument is that the statute does not, in terms or by necessary implication, require the statement of the amount due to be sworn to by the workman himself or by the furnisher' of materials, as the case may be. The third section of the act requires merely that a claimant for work done or materials, furnished in the construction of a public road or other public work shall, within 45 days after the recording of an acceptance of the work or a notice of a default on the part of the contractor, “file with the said authority [having the work done] a sworn statement of the amount due, and record a sworn statement thereof with the Recorder of Mortgages of the Parish in which the work is done.” A sworn statement made by the contractor of an amount due by him to a laborer or furnisher of materials is “a sworn statement of the amount due” — as literally as would be a sworn statement made by the laborer himself, or the furnisher of the materials. In fact, if the language of the statute gave us any preference in the matter, we should deem a statement sworn to by the contractor, of an amount due by him to a laborer or furnisher of materials, better evidence of the debt than a statement sworn to by the laborer or furnisher of materials, because the contractor’s statement in such case would be an admission against his interest, whereas the statement of the laborer or furnisher of materials would be in the nature of a self-serving declaration. All that the statute requires, however, in that respect, is a statement of the account sworn to by some one having knowledge of the existence and nature of the debt.
 

 The second defense urged by the surety company against the bank’s claim is urged also against the claim of Prentice E. Edrington, as subrogee of the claims for wages of a number of laborers who worked on the road; that is to say, that the sworn statements of the amounts due were not filed with the highway department and parish authorities until they had been transferred to the subrogee, and were not recorded until they had been transferred to the subrogee. The argument, in substance, is that there was no laborer’s lien or materialman’s lien transferred, because there was no lien to be transferred, until it had been brought into existence by the filing and recording of a sworn statement of the amount due, as required by the statute. Stated somewhat differently, the argument is that a laborer or materialman who has not yet preserved his lien by filing and recording a sworn statement of the amount due him cannot assign his right to preserve the lien to a third party. Counsel for appellant cite, in.support of their argument, a number of decisions rendered in other states, maintaining that a mechanic’s lien is not assignable until it has been preserved or perfected by the service and registry of a
 
 *927
 
 sworn statement of the amount due, and that the right to so .preserve or perfect the lien is not assignable. Counsel for the bank, and counsel for Prentice E. Edrington, cite decisions from other states, where the courts have taken the broader view that the right to preserve or perfect a lien, by the service and registry of a sworn statement of the amount due, is assignable, along with the claim which the lien secures. The decisions of the ■courts of other states on this subject can have no influence in Louisiana, where the Civil Code deals with the subject. Article .2449 of the Code declares, in very general and comprehensive terms, that any kind of right, or debt, or incorporeal thing, may be the subject of assignment or sale; and we are not aware of any special provision to the contrary with regard to the right of a laborer or furnisher of materials to assign his claim, with subrogation to his right to preserve his lien, and without first having preserved it himself by the service and registry of a sworn statement of the amount due. Liens, or “privileges,” as they are called in the Code, are not created by the recording of the evidence of the debt, but result from the nature of the debt, or the consideration for which it arose. Rev. Civ. Code, art. 3186. Title 21 of book 3 of the Code treats “Of Privileges,” and the 7th Chapter thereof bears the title: “How Privileges Are Preserved and Recorded.” Article 3272, in that chapter, declares that mechanics, laborers, furnishers of material, etc., “preserve their privileges, only in so far as they have recorded, with the recorder of mortgages * * * a detailed statement of the amount due,” etc. The expression, “preserve their privileges,” means that the privileges are already in existence before the evidence of the debt is recorded. Article 2159 of the Rev. Civ. Code defines conventional sub-rogation as that which takes place when a creditor receives payment from a third person and at the same time expressly subrogates him to his
 
 rights, actions, privileges anú, mortgages
 
 against the debtor. There is nothing in the Code forbidding subrogation to a
 
 privilege
 
 before it is
 
 preserved
 
 by registry. Our conclusion is that the subrogations which the bank obtained, to the privileges of the laborers and materialmen whose claims the bank bought, and the subrogations which Edrington obtained, to the privileges .of the laborers whose claims he bought, gave the bank and Edrington, respectively, the right to preserve their privileges, and to convert them into enforceable liens, by serving and recording sworn statements of the amounts due, as required by the statute.
 

 The surety company contends finally that the bank’s claim should be rejected, as far as the surety company is concerned, because', during the period when the bank was acquiring these claims by paying the laborers and materialmen and taking subrogations, and subsequent thereto, the bank received from the highway department, for account of the contractor, payments which were sufficient to pay these claims, and which should have been applied to the payment of them, but which were applied to an old and unsecured debt due by the contractor to the bank. The facts in that respect are not disputed. Before signing the contract, and in order to enable him to carry it out, Miller borrowed $10,000 from the bank on his promissory note, and the proceeds were placed to his credit, subject to check. . At the same time, and as part of the transaction, Miller assigned to the bank all payments coming to him from the highway department under the contract, and the highway department was duly notified of the assignment. Miller then carried on the work by drawing on his account with the bank,
 
 *929
 
 and each month the highway department sent a check to the bank, payable to the joint order of Miller and the bank, for the work done, according to the monthly estimates of the engineers; the proceeds of which checks were placed to Miller’s credit by the bank. It was expected, of course, by Miller and the bank, that the payments to be made by the highway department would exceed the expenditures to be made by Miller, and that his account with the bank would gradually increase to a sum sufíiciént to pay his note of $10,000. It developed, however, as the work progressed, that Miller’s expenditures on the work exceeded the amount of the payments which he received from the highway department on the monthly estimates, so that he was obliged to borrow more money from the bank and give additional notes, until, at the end of nine months, he owed the bank $13,618.40. The bank then refused to go on with the arrangement; and, as some other financial arrangement had to be made to avoid an abandonment of the contract and a forfeiture of the funds retained by the highway department on the monthly estimates, it was agreed by Miller and the bank that the bank would thereafter pay the laborers, according to the weekly payrolls, and pay for the materials to be used in the construction of the road, and take assignments and subrogations from the laborers and materialmen of the claims thus paid and of the liens securing them. Accordingly, an employee of the bank went every week with a sack of money and paid the wages of the laborers working on the road, and the fur-nishers of materials, and obtained from each person so paid a written assignment of his claim, with subrogation to all of his rights, privileges and liens. That went on for six months- or longer, until a short time before Miller defaulted on his contract. Meanwhile the highway department continued sending cheeks to the bank for the amounts due Miller according to the monthly estimates, and, with Miller’s consent, the proceeds of the checks were deposited to the credit of his checking account, and out of the account he drew checks for his personal use and for current expenses other than -f or labor or materials. The balances in Miller’s checking account were, from time to time, and with Miller’s consent, applied to the payment of his old debt, represented by his promissory notes, and amounting, as we have said, to $13,618.40. During the whole period the bank bought claims against Miller amounting to $20,043.56, and received from the highway department for Miller’s account $9,256.62, and received from other sources for Miller’s account $4,-143.19, thus receiving for Miller’s account $13;-399.81, of which the bank applied $3,767.80 to the payment of liens and the balance, $9,-632.01, to the payment of the old debt which Miller owed the bank.
 

 The argument of the surety company is, substantially, that the company had an equitable lien on all sums due by the highway department to Miller under the contract which the surety company had bonded, and that the bank was therefore obliged to apply all such funds received by the bank for Miller’s account to the payment of debts which the surety company was responsible for, rather than to debts which Miller alone owed the bank. In support of the argument, the attorneys for the surety company cite several decisions rendered on the equity side of the federal courts, in contests between ordinary creditors of a contractor, on the one hand, and the surety on his bond, on the other hand, each claiming a preference in the distribution of a fund due the contractor under his contract. Those decisions are not authority in this state. There is no such thing as an equitable lien in Louisiana — no lien at
 
 *931
 
 all unless it is created by statute.- Besides, the bank is claiming not' as an ordinary creditor of the contractor, but as subrogee of those whose claims the surety company guaranteed the payment of, and whom the surety company could not compete with in the distribution of funds due to the contractor in virtue of the contract.
 

 Counsel for the bank cite two decisions directly in point, viz.: Robson & Allen v. McKoin et al., 18 La. Ann. 544, and Grand Lodge, Benevolent Knights of America v. Murphy Construction Co., 152 La. 123, 92 So. 757. In Robson & Allen v. McKoin, the court said:
 

 “A debtor has control of his. means of payment, and he can impute them to the payment of any debt he chooses, and sureties have no right to control him in the -imputation.”
 

 In Grand Lodge, Benevolent Knights of America v. Murphy Construction Co., the court repeated:
 

 “In general, and except where such imputation [of payment] would amount to a fraud on the part of both debtor and creditor, the debtor may always impute the payments as he pleases; and cannot be controlled therein by a surety.”
 

 There was no fraud in this case on the part of the bank, and none is charged by the surety company. The bank was not under any contractual obligation to the surety company, did not occupy any fiduciary relation with the surety company, and was not obliged, ..either morally or otherwise, to apply the payments received from the highway department for Miller’s account to the advantage of the surety company and the correlative disadvantage of the bank.
 

 The judgment appealed from is amended, as far as- the appellant, 'Southern -Surety Company, is concerned, as follows: The judgment in favor- of Kenner Lumber Company for $548.83, with interest and attorney’s fees, .and' the judgment in favor of Jahncke Service, Inc., for $1,858.83, with interest and attorney’s fees, and the judgment in favor of Prentice E. Edrington for $2,107.18, with interest and attorney’s fees, are amended by rejecting the allowance of attorneys’ fees; the judgment in favor of John T. Gibbons for $1,-437.66, with interest and attorney’s fees, and the judgment in favor of Felix & Block for $61.88, with interest, and the judgment in favor of -Stanley A. Stewart for $67.85, with interest and attorney’s fees, are annulled; and the judgment in favor of the Interstate Trust & Banking Company for $15,804.68, with interest at 5 per cent, per annum from the 27th of May, 1922, is amended by reducing the principal sum” from $15,804.68 to $11,169.60. In all other respects the judgment appealed from is affirmed. The costs of this appeal are to be borne by Kenner Lumber -Company, Jahncke -Service, Inc., Prentice E. Edrington, John T. Gibbons, Felix & Block, Stanley A. Stewart, and the Interstate Trust & Banking Company.