A rehearing was granted on the petition of S. Bender Iron 
Supply Company and on the petition of the New York Indemnity Company.
S. Bender Iron Supply Company contends that the payment of $1,000, made by the contractor, Smith, to the company, on the 21st of May, 1930, should have been imputed to the invoice of $862.50, for the drilling rig which was sold by the company to Smith, on the 3d of April, 1930, consisting of a Worthington pump, a pair of tongs, two collars, an engine bed, two fittings, and a 72 horse power boiler. This claim, for the price of the drilling rig, was not secured by the contractor's bond, signed by the New York Indemnity Company, because the drilling rig was not in the category of appurtenances and appliances attached to an oil well, as provided for in Act No. 232 of 1916. The advantage, therefore, which S. Bender Iron Supply Company hopes to gain by the desired imputation of payment, is to extinguish the unsecured claim of $862.50 and leave a credit of only $137.50, instead of $1,000, to be applied to the secured claim, for the casing or pipe which the contractor, Smith, used in the well — the payment of the price of which casing was secured by the contractor's bond, signed by the New York Indemnity Company.
The indemnity company's complaint, in its petition for a rehearing, is that the length of the pipe or casing used by the contractor, *Page 693 
for the price of which S. Bender Iron Supply Company was given a judgment, at $1 per foot, was only 2,409 feet, and not 2,760 feet, as we thought.
We take up the complaint of the New York Indemnity Company first, because the record leaves no doubt that the length of the pipe or casing used in the well, for the drilling of which the indemnity company signed as surety the contractor's bond, was only 2,409 feet. Our error in allowing S. Bender Iron Supply Company payment for 2,760 feet, instead of 2,409 feet, of casing, came about by our being confused by testimony relating to another well. It is conceded by the indemnity company, however, that the company is liable also for $140 for other material, being 100 sacks of cement and 20 gallons of "set fast," sold and delivered by S. Bender Iron Supply Company to the contractor, and used by him in the drilling of the well. The amount, therefore, for which the indemnity company is liable, in solido with the contractor, is $2,549, less the payment made by the contractor on the 21st of May, 1930. The record shows, however, that there was included in the invoice for the 2,409 feet of casing 300 feet and 6 inches of casing sold by S. Bender Iron Supply Company to Smith, but not used in the well for which the indemnity company signed Smith's bond. Smith is therefore liable for $300.50 more than the indemnity company is liable for, on S. Bender Iron Supply Company's claim.
Referring now to the complaint of S. Bender Iron Supply Company, of our refusal to impute the payment of $1,000 first *Page 694 
to the extinguishment of the unsecured claim of $862.50, we do not find any error in our decree in that respect. The company did not apply the payment of $1,000 first to the extinguishment of the unsecured debt of $862.50, but applied it to the total amount of Smith's debt to the company. Then, in answer to this suit, the company urged that the balance of the debt due by Smith to the company was secured by the contractor's bond. We found that the $862.50 of the balance of the debt due by Smith to the company was not so secured. It was not claimed, in the company's pleading, that the $862.50, price of the drilling rig, included in the account annexed to the company's answer to this suit, had been paid. Our opinion, however, is that that plea would not have been well founded if it had been made in the company's answer to the suit. The $1,000 was paid by Smith at a time when he owed both the secured and the unsecured invoices, amounting to $2,849.50, and the payment was made without any stipulation or understanding that any particular item or items on either of the invoices should be thereby paid for. It is argued by counsel for the company that the payment should have been imputed first to the debt of $862.50, because that debt was older (eleven days older) than the secured debt. The record leaves some doubt as to whether the secured or the unsecured debt was the older of the two debts. But, even if the unsecured debt was older than the secured debt, the payment on account of the whole debt, without any stipulation or understanding that the older debt should be thereby extinguished, should have been applied first to the debt which the debtor, Smith, had the most interest in discharging, *Page 695 
Rev. Civ. Code, art. 2166. And it has been decided that a debtor has more interest in discharging a debt secured by a bond and surety than he has in discharging an unsecured debt. Grand Lodge, Benevolent Knights of America, v. Murphy Construction Co.,152 La. 123, 92 So. 757. Under article 2166 of the Civil Code, it is only when the two debts are "of a like nature" that a payment without any stipulation or understanding as to the imputation of payment must be imputed "to the debt which has been longest due." Counsel for S. Bender Iron Supply Company cite State v. Miller et al., 169 La. 914, 126 So. 422; but in that case the debtor stipulated that the payments should be applied to a certain unsecured debt. And in that case we referred to the decision in the Grand Lodge Case as authority for the proposition that the surety on a contractor's bond could not control the contractor in the matter of paying whatever debt the contractor saw fit to pay, in preference to another debt.
The decree heretofore rendered by this court is now amended by giving S. Bender Iron Supply Company judgment against M.H. Smith and the New York Indemnity Company, in solido, for $1,549, instead of $1,760, with interest at 5 per cent. per annum from the 14th of April, 1930, and by giving S. Bender Iron Supply Company judgment against M.H. Smith for the additional sum of $300.50, with interest at the same rate and from the same date. In all other respects the decree rendered by this court on the 25th of April, 1932, is reinstated and made the final judgment of the court.
ST. PAUL, J., takes no part. *Page 696