**R. P. FARNSWORTH & CO., Inc., v. ELECTRICAL SUPPLY CO.**

**No. 9138.**

Circuit Court of Appeals, Fifth Circuit.

May 18, 1940.

Rehearing Denied July 2, 1940.

See 113 F.2d 111.

McCORD, Circuit Judge, dissenting in part.

J. C. Henriques and Gordon Boswell, both of New Orleans, La., for appellant.

Irving R. Saal and Lawrence K. Benson, both of New Orleans, La., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

R. P. Farnsworth & Co., Inc. (called hereinafter Farnsworth), contracted with the United States to construct a building for the Marine Hospital at New Orleans and gave the bond required by statute, 40 U.S.C.A. § 270, with Union Indemnity Company as surety. The building was finished and occupied early in 1932, but a balance on the contract price was retained by the United States to protect certain final adjustments. This balance was reduced to $82.80, which was paid over June 6, 1935. On July 24, 1935, Electrical Supply Company (hereinafter called Electric), from whom a subcontractor, Freeman, had bought electrical equipment for the building, brought suit on the bond (the United States not having sued) against Farnsworth as principal and the receivers of the surety, to recover $20,287 and interest due for materials so furnished. The receivership had no assets, and the receivers were dismissed from the suit. Farnsworth mainly contended that the remedy on the bond was barred because suit was not instituted within one year after the performance and final settlement of said contract, as limited by the statute; that large payments had been made to Freeman, which had been misapplied to other claims held by Electric against Freeman; and that no interest was recoverable. On a trial before a jury the verdict was directed against Farnsworth for principal and interest, and this appeal followed.

The statute, 40 U.S.C.A. § 270, distinctly provides that furnishers of labor and materials may not sue upon the bond unless the United States have not sued within six months from the completion and final settlement of the contract, but after six months they may sue in the name of the United States, but suit "shall be commenced within one year after the performance and final settlement of said contract, and not later." By "final settlement" is not meant final payment by or to the United States of what is owing, but the administrative determination by the officer having the execution of the work in charge that it has been performed and his finally fixing the amount due to be paid by or collected for the United States; that payment may be held up or refused in the General Accounting Office does not alter the date of the "final settlement" of the contract. Illinois Surety Co. v. United States, 240 U.S. 214, 36 S.Ct. 321, 60 L.Ed. 609; Globe Indemnity Co. v. United States, 291 U.S. 476, 54 S.Ct. 499, 78 L.Ed. 924. In the present case the contract work was substantially done before July 2, 1932, and on that date the Assistant Secretary of the Treasury, having it in charge, wrote the contractor a letter, the material part being as follows: "The building was occupied prior to the expiration of your contract time on Jan. 2, 1932. There remained for correction * * * a number of minor items which the records indicate were completed by you without loss or inconvenience to the Government. There is a balance due you under this contract of $4,332.80. You will be paid at this time on account of your said contract the sum of $4,250, the balance retained, $82.80, being considered sufficient to protect the Government's interests pending final settlement of your contract." Farnsworth contends this was a "final settlement" fixing the amount due him. Electric contends that "final settlement" first occurred July 28, 1934, when a report on the contract was made by the Director of Procurement to the Secretary of the Treasury which showed the original contract price, the additions to and deductions from it from time to time, and the payments on account, leaving a balance of $82.80. It recited the satisfactory completion of the work and the correction of defects and omissions by February 24, 1932, and an adjustment of other minor defects by June 2, 1932. The report concluded: "Final settlement of this contract has been withheld pending the replacement of a section of brick wall by the contractors. This section was removed for a driveway and was not replaced until Sept. 15, 1933. * * * In view of the fact that there was no delay in actual completion of the work and that the apparent delay in final completion of the contract due to the correction of defects and omissions caused no loss or inconvenience to the Government, it is recommended that liquidated damages be waived and authority be given for the payment of the balance due, viz: $82.80, from the appropriation Marine Hospital, New Orleans, Louisiana." This report was indorsed "Approved. Damages waived; and contract referred to Comptroller General for direct payment. July 28, 1934," signed by the Secretary of the Treasury. The judge correctly held that as a mat-

ter of law the latter and not the former paper was the "final settlement." The letter of July 2, 1932, narrowed the settlement of a very large contract to a very small compass, $82.80 and a breach in the wall; but it was not final. The $4,250 then authorized to be paid was "on account of your said contract", and not in full. The $82.80 was expressly stated to be "retained * * * to protect the Government's interests pending final settlement of your contract." If the wall had not been fixed the $82.80 would not have been paid, and there might have been a claim made against Farnsworth. Not until the wall was rebuilt and the order passed to pay the $82.80 was there a final settlement of the contract. The suit was filed within a year from that date and was not barred.

 We think the question of application of payments was wrongly decided. The subcontractor Freeman had dealt with Electric for years before this contract began and then owed it about $20,-000. According to some of the witnesses, Electric insisted on being paid all that Freeman should get from Farnsworth on his monthly estimates on this job less his payrolls, and got leave to inspect his books to keep check on him, and used the privilege, and was aware that the moneys paid were from this job though paid by Freeman's personal check. This was denied, but could have been found true by the jury. Assuming its truth, we are of opinion that Electric could not apply moneys so paid to the older items of its account against Freeman and leave the materials furnished for this job unpaid. The circumstances indicate that Freeman was at the time financially shaky and is now insolvent. What has happened allows Electric to collect its old debt out of the moneys paid on this contract, and to leave the charges for material furnished for it outstanding against the bond. This is to the prejudice of the principal and the surety on the bond, and of other beneficiaries of the bond, and if sanctioned might cause great injustice. In a recent case involving a similar bond we said: "We think also that there is probably an implied obliga-

tion on the contractor, especially if he be insolvent, not to divert money from the job, which may be enforced by the surety in equity." Town of River Junction v. Maryland Casualty Co., 5 Cir., 110 F.2d 278, 281. Such an obligation was enforced by a reapplication of payments in Columbia Digger Co. v. Sparks, 9 Cir., 227 F. 780, and in United States v. Johnson, Smathers & Rollin, 4 Cir., 67 F.2d 121, 122. [1] The Sparks case probably went too far, as contended by the dissenting judge, in asserting that notice to the payee of the source of the payment was unnecessary. Compare Kane v. First Nat. Bank, 5 Cir., 56 F.2d 534, 85 A.L.R. 362. There is no trust attaching to the monthly payments made to the contractor which prevents his using them generally as his own; but when he pays them over to a furnisher of materials for the job who knows their source, there is a duty to apply the money to the payment of those materials rather than to some other debt. Freeman was under that duty to Farnsworth and Farnsworth's surety, and Electric could not knowingly join Freeman in applying the payment otherwise, nor knowingly misapply it without Freeman's consent. It is true that the Civil Code of Louisiana, Arts. 2163, 2165, 2166, allows the debtor to declare when he makes a payment which of several debts he means to discharge, and if he accepts a receipt applying the payment to one debt he cannot, absent fraud or surprise, afterwards require its application to another debt; and where neither at the time applies the payment, it goes to the debt most burdensome to the debtor, and if all are of like nature, to that longest due. The law is similar in other States. But these rules hold good only between the parties; and if third persons have rights which are affected, those rights may control the application of the payment. The Louisiana law recognizes that in general when one debt is unsecured and the other binds a surety, if there is no express imputation of a payment it ought to go to discharge the surety. See Miller v. The S. F. J. Trabue, 16 La.Ann. 375. In Grand Lodge v. Murphy Const. Co., 152 La. 123, 92 So. 757, many local and general authorities

[1] Delaware Dredging Co. v. Tucker Stevedoring Co., 3 Cir., 25 F.2d 44, is seemingly to the contrary, but no question was raised as to whether or not the source of the money was known to the re-

cipient. In Maryland Casualty Co. v. City of South Norfolk, 4 Cir., 54 F.2d 1032, 1038, the court is careful to point out that it did not appear that the payment was derived from the bonded job.

were cited to show that a surety could not be prejudiced by diverting money contrary to an express or implied agreement with him known to the payee, because it would be a fraud. Such knowledge was held essential to defeat the attempted imputation of the payment in Hortman-Salmen Co. v. Continental Casualty Co., 170 La. 879, 129 So. 515. The Court of Appeals in Hortman-Salmen Co. v. Naquin, 12 La.App. 491, 126 So. 453, had a public construction case much like this, and on a review of the Louisiana decisions held that a surety in general cannot control the imputation of payments made by his principal, but that where the imputation would be prejudicial to a third person who furnished the funds for the payment neither the Code, nor an agreement between debtor and creditor with knowledge of the source of the funds, would uphold the misapplication of money thus paid.[2] The rights and liabilities of the parties to a bond given to the United States under the federal statute rest upon the federal law and not the State law, and the implied right to have funds from the contract which are knowingly received by a furnisher of labor or material applied to these claims rather than to some other debt, is not to be affected by local law. But if so affected, the Louisiana law is not at variance with that heretofore declared in the courts of the United States. The question ought to have been submitted to the jury, What if any monies paid Freeman by Farnsworth on account of this job were, with notice of their source, applied by Electric to debts other than those covered by this bond?

■ The bond binds the principal and surety that the contractor "shall promptly make payments to all persons supplying him with labor and materials in the prosecution of the work." If payment is not promptly made, interest ought generally to be allowed in a suit on the bond. No federal law fixes the rate of interest, so that fixed by the contract of hiring or purchase of the materials, or by the

law of the place of such contracts, will be applied. Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206. Most of the materials here in question were furnished on written orders specifying 8% interest. In the event of recovery interest on these items is allowable at that rate after the date fixed in the orders. On items not so evidenced, interest at the legal rate in Louisiana, 5%, is allowable from the date payment ought to have been made. Louisiana Civil Code, Art. 1938. Monthly statements were rendered. There is no dispute as to the amount of any item, but only whether it has been paid on a proper imputation of the money arising from this building contract.

Because of error touching the imputation of payments the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

McCORD, Circuit Judge.

I concur in the reversal of this cause but I disagree with that portion of the opinion which holds that Electrical Supply Company filed suit in time. The Hurd Act, 40 U.S.C.A. § 270, provides that suits by furnishers of labor and materials "shall be commenced within one year after the performance and final settlement of said contract, and not later." The pivotal words in the statute are not "final payment", but "final settlement". Illinois Surety Company v. United States, 240 U. S. 214, 218, 36 S.Ct. 321, 60 L.Ed. 609.

Farnsworth's contract called for the construction of a $1,178,000 building on the Marine Hospital Grounds. The record shows that the contract was completed within the agreed time and the letter from the Assistant Secretary of the Treasury on July 2, 1932, recited this fact. The letter further stated, "There is a balance due you under this contract of $4,332.80. You will be paid at this time on account of your said contract the sum of four thousand two hundred fifty dollars ($4,-

---

[2] Grand Lodge v. Murphy Const. Co., 152 La. 123, 92 So. 757, draws a clear distinction between cases in which the source of money paid on a public building contract is known and those where it is unknown. It was followed in Thompson & Co. v. Sporl, 160 La. 352, 107 So. 135, and Hortman-Salmen Co. v. Continental Casualty Co., 170 La. 879, 129 So. 515. In State v. Miller, 169 La. 914, 126 So. 422, there were special circumstances and agreements, and the court said federal decisions on public contracts were not authority in Louisiana on a public contract. By the same token, Louisiana decisions are not authority touching the public contracts of the United States.

250), the balance retained ($82.80), being considered sufficient to protect the Government's interests pending final settlement of your contract."

Farnsworth had removed a portion of a brick wall on the hospital grounds to make a driveway to facilitate the moving of materials to the work site. The record shows that the $82.80 referred to in the letter of July 2, 1932, was retained by the Government to take care of the cost of replacing the brick wall in the event Farnsworth did not do so. This small sum was not being withheld pending final settlement of the $1,178,000 contract. Final settlement was in all things consummated as shown by the letter. The opening in the wall was being kept open by the contractor to move materials to another building which was being constructed by him and under another and different contract from the one here under consideration. The Government, through duly authorized channels, determined the final balance due Farnsworth on the contract on July 2, 1932, and I think that for this reason the suit filed by Electrical Supply Company was filed too late. Illinois Surety v. United States, 240 U.S. 214, 36 S.Ct. 321, 60 L.Ed. 609; Globe Indemnity Company v. United States, 291 U. S. 476, 54 S.Ct. 499, 78 L.Ed. 924; Consolidated Indemnity & Ins. Company v. W. A. Smoot & Co., 4 Cir., 57 F.2d 995.