The **BROWARD COUNTY, FLORIDA COMMISSION** for the use and benefit of **GENERAL ELECTRIC COMPANY**, a corporation, doing business as General Electric Supply Company, a division of General Electric Company, Plaintiff,

v.

**CONTINENTAL CASUALTY COMPANY**, a corporation, Defendant,

v.

**UNITED BENEFIT FIRE INSURANCE COMPANY**, a corporation, Third-Party Defendant-Fourth-Party Plaintiff,

v.

Eugene C. CORNELIUS, Shirley E. Cornelius, E. C. "Red" Cornelius, Inc., a Florida corporation and E. C. "Red" Cornelius Overseas, Inc., a Florida corporation, Fourth-Party Defendants.

**CONTINENTAL CASUALTY COMPANY**, a corporation, Cross-Plaintiff,

v.

**LITTLE RIVER BANK AND TRUST COMPANY**, a Florida banking corporation, and John A. Volpe Construction Co., Inc., a Massachusetts corporation, Cross-Defendants.

No. 64–165–Civ–DD.

United States District Court S. D. Florida.

June 7, 1965.

James A. Fischette, Fischette, Parrish & Owen, Jacksonville, Fla., for plaintiff (Broward County, Florida Commission).

Charles F. Mills, Quarles, Mills, Magill & Lanza, South Miami, Fla., for defendant and cross-plaintiff (Continental Cas. Co.).

William T. Moore, Moore & Moore, Miami, Fla., for third-party defendant-fourth-party plaintiff (United Benefit Fire Ins. Co.).

Joe Creel, Creel, Glasgow & Sanderson, Miami, Fla., for fourth-party defendants (Eugene C. Cornelius, E. C. "Red" Cornelius, Inc., and E. C. "Red" Cornelius Overseas, Inc.).

Charles J. Bodner, Miami, Fla., for fourth-party defendant (Shirley E. Cornelius).

John L. Britton, Feibelman, Friedman, Hyman & Britton, Miami, Fla., for cross-defendant (Little River Bank & Trust Co.).

James Knight, Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, Fla., for cross-defendant (John A. Volpe Construction Co., Inc.).

DYER, Chief Judge.

The use plaintiff, GENERAL ELECTRIC COMPANY, doing business as GENERAL ELECTRIC SUPPLY COMPANY, a division of GENERAL ELECTRIC COMPANY, (hereinafter called "G.E.") brought this action against CONTINENTAL CASUALTY COMPANY (hereinafter called "CONTINENTAL") under Florida Statute § 255.05 F.S.A., the pertinent provisions of which are as follows:

"Any person entering into a formal contract with * * * any * * * public authority, for the construction of any public building, or * * * public work * * * shall be required, before commencing such work, to execute the usual penal bond, * * * with the additional obligations that such contractor shall promptly make payments to all persons supplying him labor, material and supplies, used directly or indirectly by the said contractor, or subcontractors, in the prosecution of the work * * * and any person * * * supplying such labor, material or supplies shall have a right of action, and may bring suit in the name of * * * (said) political (authority) * * * for his use and benefit, against said contractor, and sureties * * * ."

The Complaint alleged that THE BROWARD COUNTY, FLORIDA COMMISSION contracted with JOHN A. VOLPE CONSTRUCTION CO., INC. (hereinafter called "VOLPE") to construct certain improvements to the Hollywood Memorial Hospital located in Broward County, Florida. VOLPE in turn subcontracted the electrical portion of this contract to E. C. "RED" CORNELIUS, INC. (hereinafter called CORNELIUS"). VOLPE furnished a surety bond on which VOLPE and CONTINENTAL were principal and surety respectively, and THE BROWARD COUNTY, FLORIDA COMMISSION was obligee. This bond was in the penal sum of $3,475,000.00; and at the time VOLPE sublet the electrical work to CORNELIUS,

CORNELIUS was required to and did furnish a surety bond in favor of VOLPE (as obligee) and with CORNELIUS as principal and UNITED BENEFIT FIRE INSURANCE COMPANY (hereinafter called "UNITED") as surety in the penal sum of $436,000.00.

G.E. in its Complaint claimed damages of $75,000.00 against CONTINENTAL for materials furnished to CORNELIUS, and used in the Hollywood Memorial Hospital job, but not paid for, plus interest, costs, and attorneys' fees. Because the claim of G.E. arose under the CORNELIUS subcontract CONTINENTAL caused CORNELIUS' surety, UNITED, to be brought into the case to answer to CONTINENTAL for whatever damages were awarded to G.E. against CONTINENTAL. UNITED in turn caused E. C. "RED" CORNELIUS, INC., E. C. "RED" CORNELIUS OVERSEAS, INC., EUGENE C. CORNELIUS and SHIRLEY E. CORNELIUS to be brought in as fourth party defendants to answer as indemnitors to UNITED for whatever damages UNITED suffered to CONTINENTAL by reason of the G.E. claim.

When it later appeared that VOLPE still held funds which would have been payable to CORNELIUS had the job been completed without any claims against CORNELIUS for its defaults, and those funds or retainages were claimed by LITTLE RIVER BANK and TRUST COMPANY (hereinafter called "THE BANK"), which had loaned $30,000.00 to CORNELIUS during the progress of the hospital job and had taken an assignment from CORNELIUS of the retainages as security for the loan, THE BANK and VOLPE were impleaded into the case by CONTINENTAL. VOLPE thereafter deposited the retainages into the registry of this Court by way of interpleader, and VOLPE's attorneys were awarded a fee paid from the funds so deposited, and the Court thereupon dismissed VOLPE from this cause.

THE BANK thereafter made claim against the funds in the Court registry, as did CONTINENTAL and UNITED. In addition, THE BANK crossclaimed

against UNITED, claiming its funds were used to pay payrolls of CORNELIUS on the hospital job; and hence, it (THE BANK) had a direct cause of action on UNITED's bond.

The fund in the registry of the Court stands at $32,229.02.

By pretrial stipulation, the parties waived jury trial and stipulated as follows:

(a) That G.E. furnished materials at the request of CORNELIUS which were used in the hospital job, and that G.E.'s books reflect an unpaid balance due for said materials of $55,974.66; but there remained a genuine issue as to whether payments made by CORNELIUS to G.E. from time to time were properly applied by G.E. to accounts outstanding with CORNELIUS.

(b) That whatever G.E. obtained judgment for against CONTINENTAL, CONTINENTAL should likewise obtain judgment for the same against UNITED.

(c) Fourth party defendants, E. C. "RED" CORNELIUS, INC., E. C. "RED" CORNELIUS OVERSEAS, INC., and EUGENE C. CORNELIUS, stipulated that UNITED should recover judgment over against them jointly and severally for whatever CONTINENTAL recovered against UNITED, and in addition, UNITED's judgment should include other sums paid by UNITED heretofore for other claims and adjustment expenses, including attorneys' fees, except that said parties agreed that rather than include the sums actually paid by UNITED for attorneys' fees, the amounts should be left up to the Court for determination. Since the fourth party defendants offered no evidence on the question of attorneys' fees, the Court finds the sums actually paid by UNITED to be reasonable as hereinafter noted.

(d) Fourth party defendant, SHIRLEY E. CORNELIUS, did not stipulate to be bound by the stipulation entered into by her co-fourth party defendants, but she offered no testimony or evidence at trial. The Court therefore finds that she is bound to UNITED as and to the same extent as the other fourth party defendants as a matter of law and to the extent hereinafter noted.

(e) All parties to this cause, with the exception of THE BANK, agreed that the fund deposited in the Court's registry by VOLPE should first be used to satisfy any judgment which G.E. obtains in this cause against CONTINENTAL, to the extent it is available; and if G.E. obtains judgment against CONTINENTAL for an amount less than the fund, the excess should go to UNITED to the extent necessary to reimburse it for losses it has already paid under its bond, including claims, interest, costs and attorneys' fees to reduce (or satisfy if sufficient in amount) the judgment UNITED obtains against the fourth party defendants.

Because the parties agreed in their pretrial stipulation that the use plaintiff, G.E., had established a prima facie case of its claim against CONTINENTAL of the sum of $55,974.66, this cause came on for trial before the Court without a jury upon the defensive issues raised by CONTINENTAL and adopted by UNITED.

Jurisdiction is grounded upon diversity of citizenship (Title 28, U.S.C.A. § 1332) and third party practice as permitted by Rule 14 of the Federal Rules of Civil Procedure; and in the case of the interpleader relief, jurisdiction is based upon Title 28, U.S.C.A. § 1335; and in the case of the declaratory relief, jurisdiction is based upon Title 28, U.S.C.A. § 2201. G. E. is a New York corporation with its principal place of business in New York, and defendant CONTINENTAL is an Illinois corporation with its principal place of business in Illinois. Jurisdiction over the cross-claims and counterclaims is ancillary to the main action.

## I

G.E. had done business with CORNELIUS for approximately 20 years prior to the time of the hospital job, and during those years G.E. had often carried large amounts upon its books due from CORNELIUS for purchases of materials and supplies. At the time CORNELIUS first began purchasing materials from G.E. for the hospital job, CORNELIUS owed G.E. between $132,000.00 and $175,000.00.

Except for three or four instances, instructions were not given as to application of funds by CORNELIUS to G.E. at the time of making the 22 payments on account during the period from June 29, 1961 to December 27, 1962, while the hospital job was in progress.

For a number of years prior to 1961, G.E. and CORNELIUS had attempted to keep track of the various amounts carried on the G.E. books by use of so-called "aging sheets." These were prepared by G.E. personnel and consisted of a list of jobs for which G.E. had supplied materials to CORNELIUS, as well as a "Regular Account" listing for purchases for smaller jobs and for the CORNELIUS general warehouse inventory buildup. These jobs were listed vertically on the "aging sheets" in a column on the left side of each sheet. Opposite each job and moving toward the right were figures in columns by month, starting from the most recent and working toward the oldest. Thus, anyone familiar with the procedure could, at a glance, determine the amounts due on the oldest unpaid accounts and to which jobs these outstanding balances pertained.

It was not uncommon for representatives of G.E. to visit CORNELIUS' office and discuss the outstanding accounts. G.E. generally knew which jobs CORNELIUS had going and about when CORNELIUS was due to receive progress draws from various jobs.

Prior to the Hollywood Hospital job, it had been standard procedure for G.E. to credit payments it had received from CORNELIUS to the oldest outstanding accounts. While CORNELIUS was actively engaged in the Hollywood Hospital job between June 21, 1961 and December 27, 1962, payments were treated in this manner for the months of June through November, 1961. Thereafter, this was not done; although generally speaking, the older accounts were first credited, but no meticulous proration between them was carried out.

During this time CORNELIUS had twelve or more jobs going, and payments made to him were deposited in one bank account from which he drew funds to pay G.E. Most of the jobs of any size were bonded either by CORNELIUS or the prime contractor. On at least two occasions, CORNELIUS "jump credited" G.E., that is, CORNELIUS paid G.E. on account even though there were other older accounts then unpaid.

CORNELIUS was constantly asked by G.E. to pay what it could on all accounts then due. G.E. did not know how much CORNELIUS could collect each month from the various jobs it had going.

In late November, 1962, CORNELIUS informed G.E. that it was in serious financial trouble. Thereafter, CORNELIUS collaborated with G.E. to have payments in some instances credited to other than the older accounts so that CORNELIUS could obtain release of liens to submit to the prime contractors.

On or about December 12, 1962, EUGENE C. CORNELIUS and SHIRLEY E. CORNELIUS gave G.E. a note in the amount of $25,206.92 secured by a mortgage which encumbered certain property owned by them in North Carolina. CORNELIUS directed that this mortgage and note be applied on a job indebtedness CORNELIUS had with G.E., known as the Zayre job, for materials purchased in August through November, 1962.

Also, on December 12, 1962, CORNELIUS, EUGENE C. and SHIRLEY E. CORNELIUS gave G.E. a note for $40,-000.00 secured by a mortgage which encumbered certain property owned by CORNELIUS in Miami, Florida, and directed that this mortgage and note be

applied on the regular account, which then had a balance of $37,389.60. Thereafter, G.E. carried a "credit balance" in the regular account until such time as the regular account purchases thereafter absorbed the credit balance.

After receipt of the two mortgages and notes, the regular account and Zayre account balances were taken off the aging sheets for December, 1962.

In February, 1963, G.E. procured five written assignments of funds due CORNELIUS to be applied as follows:

$56,000.00 to apply on MIAD Concourse No. 2 job;

1,959.00 to apply on Eastern Airlines Waste Plant job;

14,500.00 to apply on Richards Store job;

1,894.20 to apply on Homestead Airport job; and

25,200.00 to apply on Bethesda Hospital job.

These assignments were dated February 13, 1963, and were each on bonded jobs.

Five days later, on February 19, 1963, G.E. made claim on VOLPE for the sum of $59,689.22 which its books showed was still due on the Hollywood Hospital job. This prompted VOLPE to notify UNITED as CORNELIUS' surety. UNITED then made demand upon its indemnitors, who are the fourth party defendants, on February 27, 1963. On March 1, 1963, UNITED defaulted CORNELIUS and notified VOLPE not to make any further payments to CORNELIUS, and demanded that VOLPE pay retainages to UNITED. On March 15, 1963, the attorneys for UNITED again wrote VOLPE and reaffirmed its prior position with respect to retainages and warned VOLPE not to pay the retainages to the bank, who was likewise claiming them.

It is UNITED's contention that the principle of "first in, first out," or "FIFO," as the term was used at the trial (derived from an accounting term usually pertaining to an inventory of goods), must be employed throughout the entire period to liquidate the older debts first. Thus, payments not so applied must be so adjusted or prorated, as must the two notes and mortgages, and the assignments of the five accounts receivable. If this were done, says UNITED, it would have satisfied all of CORNELIUS' obligations to G.E.

Stated another way, since G.E. established a prima facie case for the sum of $55,974.66, the only questions to be decided by the Court in connection with G.E.'s claim are those which are raised by the defensive pleadings of CONTINENTAL and UNITED to the effect that G.E., having failed to strictly apply "FIFO," it misapplied payments received from CORNELIUS during the course of construction of the hospital job to outstanding accounts other than the hospital job.

■ CONTINENTAL and UNITED rely upon Barnett v. Concrete Placing Co., Inc., Florida, 120 So.2d 628, 3rd District 1960; St. Paul Fire and Marine Ins. Co. v. U. S. for the Use of Dakota Electric Supply Company, 8th Cir. 1962, 309 F.2d 22, and R. P. Farnsworth & Co., Inc. v. Electrical Supply Co., 5th Cir. 1940, 112 F.2d 150. These cases stand for the proposition that the creditor is under a duty to apply a payment to a particular debt on which the source of the payment is a surety, rather than any other debt, despite the debtor's contrary direction, if the creditor knows, or the facts put him on notice, of its origin.

That this is the settled law of Florida and the Federal Courts in Miller Act cases, there can be no doubt. But this is not the same thing as saying "FIFO." On the contrary, it was the very application of "FIFO" by the creditor in Barnett, Farnsworth and St. Paul (the application of payments to the older accounts at the expense of money derived from a newer bonded account) that was condemned. So here we are not concerned with "FIFO," but rather whether (1) G.E. knew, or (2) had reason to know the payments being made to it during the time in question were from sources where a surety was involved. The defendants have not carried their

burden to establish this affirmative defense.

In St. Paul, the subcontractors specifically earmarked payments to be applied to older obligations, and Dakota Electric (the supplier) so applied them at a time when the subcontractor was effectively under the control of the supplier.

In Farnsworth, the supplier insisted on being paid all that the contractor got from the owner on its progress payments. It had the right to, and did, examine the contractor's books and was thereupon aware that the monies paid came from the particular bonded job.

In Barnett, there was only one job that the supplier and contractor were accomplishing, so there could be no doubt about knowledge.

■ In the case at bar, no claim of actual knowledge by G.E. was made, and the evidence falls far short of showing circumstances that were such as to make it reasonable to know from whence the funds came.

■ The argument, that the five accounts that were assigned to G.E. by CORNELIUS should be credited to the hospital job on the basis of "FIFO," would discard the principle that monies derived from a surety source should be applied to that debt in view of the fact that each of these jobs was bonded and the credits, therefore, were required to be made to that particular job.

■ It is undisputed that CORNELIUS had completed the Zayre job and needed a release from G.E. MR. and MRS. CORNELIUS therefore gave the note and mortgage to G.E. encumbering their own property in North Carolina for this purpose. Likewise, CORNELIUS desired to be unburdened of the necessity of making payments to the "Regular Account" of G.E. so that he could use this money to obtain releases on jobs on which he had retainages still due to him. Thus, he gave the mortgage on the company's warehouse. Neither "FIFO" or Barnett's requirement of payment application is applicable under these circumstances.

Neither mortgage was given to *extend* the time of payment of the obligation of CORNELIUS, thus they did not affect the relation of the surety or prejudice it in any way.

## II

■ It follows then that the Plaintiff is entitled to a judgment for the principal sum of $55,974.66; and since statutory notice was given by the plaintiff to the defendant CONTINENTAL on February 13, 1963, the plaintiff is entitled to interest on this sum at the rate of 6 per cent per annum from that date until paid.

■ The plaintiff is also entitled to recover attorneys' fees pursuant to Sections 627.0127 and 627.0905 of the Florida Statutes, F.S.A. The Court finds that a reasonable fee for plaintiff's attorneys herein to be the sum of $7,800.00.

## III

With respect to THE BANK's claim, during the month of September, 1962, CORNELIUS, hard-pressed for funds to finish the Hollywood Memorial Hospital, went to THE BANK and attempted to secure a loan of $30,000.00, the proceeds of which were to be used by CORNELIUS to pay laborers and materialmen on the hospital project. THE BANK agreed to loan the money subject to the approval of both VOLPE and UNITED. UNITED, through an agent without authority, and VOLPE agreed to the loan. There was no showing, however, that CORNELIUS used the money to pay the laborers and materialmen.

■ THE BANK heretofore filed a suit in the Circuit Court in and for Dade County, Florida, seeking recovery of the same sums held by VOLPE as retainage from CORNELIUS which are now in the registry of this Court. VOLPE, CORNELIUS, CONTINENTAL and UNITED were defendants in that cause. The suit was dismissed, the Court finding as a matter of law that the suit was premature "since those retainable sums are not now due, nor have they been due at any time in the past." No showing has been made by THE BANK to indicate that the

facts or circumstances as they now exist are any different than they were when the State Court's decision was rendered on April 6, 1964.

■ It would appear that THE BANK's claim against the retainage funds has been resolved against THE BANK, and the matter is therefore res judicata as to them, and this Court so holds. In addition, it appears that Section 6 of the contract between VOLPE and CORNELIUS would, notwithstanding the assignment given THE BANK, and notwithstanding the alleged approval of the assignment given by VOLPE and/or UNITED, constituted a bar to THE BANK's claim against the retainage. This is so because Section 6 requires CORNELIUS to give an affidavit to VOLPE that all its obligations in connection with the job have been paid before the retainage becomes due COR-NELIUS. No such affidavit was shown to have been given, and indeed, no such affidavit could be given as long as the G.E. claim is outstanding. THE BANK as assignee could have no greater rights than CORNELIUS, its assignor.

■ With respect to THE BANK's direct claim against UNITED's bond, the bond itself does not purport to cover loans to the principal under the bond. In addition, it is settled Florida law that a surety completing work after abandonment by the contractor is subrogated to the rights of the owner in the retainage funds as against a money lender who took an assignment of those funds as security for the loan, even though the loan proceeds were used to pay obligations connected with the bonded job which the surety might have been otherwise obligated to pay. Union Indemnity Co. v. City of New Smyrna, et al., 1930, 100 Fla. 980, 130 So. 453; Commercial Bank in Panama City v. Board of Public Instruction of Okaloosa County, et al., 55 So.2d 552, S.Ct.Fla.1951; Lacy v. Maryland Casualty Co. (and Murchison National Bank v. Maryland Cas. Co.) 32 F.2d 48, 4 Cir. 1929.

■ It is unnecessary for the Court to decide whether THE BANK's notification to UNITED's unauthorized agent, that THE BANK's loan was used to pay laborers and materialmen on the hospital job, affects its direct claim on the bond because it was not shown that the loan proceeds were so used, and it would not create liability as a matter of law, under the ruling of Union Indemnity Co., supra.

In accordance with the pretrial stipulation, CONTINENTAL is therefore entitled to have paid to it the sum of $32,-229.02 now in the registry of the Court.

## IV

Defendant and third party plaintiff, CONTINENTAL, is entitled to' recover against third party defendant, UNITED, the principal amount of $55,974.66 with interest, and attorneys' fees of $7,800.00 (as found in Part II hereof), less the sum of $32,229.02 to be paid to CONTINEN-TAL from the registry of the Court (as found in Part III hereof).

## V

Third party defendant and fourth party plaintiff, UNITED, is entitled to recover severally from fourth party defendants, EUGENE C. CORNELIUS, SHIR-LEY E. CORNELIUS, E. C. "RED" CORNELIUS, INC., and E. C. "RED" CORNELIUS OVERSEAS, INC., the sum for which it is liable to CONTINEN-TAL (as found in Part IV hereof), together with the items it paid for bond losses and expenses in the sum of $18,-815.65..

## VI

The claim of cross-defendant Bank against third party defendant, UNITED, is denied with costs to be taxed against defendant Bank.

Plaintiff E.G. is entitled to costs against CONTINENTAL; CONTINEN-TAL against UNITED; and UNITED against the fourth party defendants, all to be taxed by the Clerk.

This Opinion will serve as the Court's Findings of Fact and Conclusions of Law.

Appropriate Judgments in accordance herewith to be settled and submitted within ten (10) days.